## A04A2236. FELTON v. THE STATE.
### (606 SE2d 649)

JOHNSON, Presiding Judge.

A Gwinnett County jury found Gregory Allen Felton guilty of burglary, attempted rape, false imprisonment, and battery. On appeal, Felton claims the trial court erred in (i) granting the state's motion to excuse jurors Patel and Czarick for cause, (ii) sentencing him on all counts because his sentences merged by operation of law, and (iii) failing to exclude his out-of-court statement to police. Felton also claims he received ineffective assistance of counsel. We affirm for the reasons set forth below.

Viewed to support the jury's verdict, the evidence shows that around 11:30 p.m. on November 10, 2000, the victim was awakened in her bed by a naked man who was on top of her with his hand over her mouth. The room was dark, and the victim did not initially recognize her assailant. They struggled, and the man tried to spread her legs apart, saying "I want your p---y." The victim bit the man, he struck her in the eye with his fist, and they rolled off the bed onto the floor. The man, Felton, called the victim by her first name, and she recognized his voice. Felton had formerly lived next door to the victim.

The victim tried to convince Felton to leave. He dragged her to her closet and tied her up with her clothes. Felton lay on top of her and rubbed his body against her but then left the house. The victim freed herself and called the police. The victim told the investigating officers that she believed Felton was her attacker. After the police arrived, officers retrieved the victim's nightgown and other items that may have been touched by her attacker. DNA testing showed the blood on the nightgown belonged to Felton.

A few days after the incident, police located Felton at a friend's house. Felton agreed to accompany the officers back to the police department. After they arrived, the officers informed Felton of his *Miranda* rights and then conducted a videotaped interview. During the interview, Felton admitted that he been drinking the evening of the incident and had been to the victim's house. At trial, Felton testified that he had entered the victim's home to obtain a gun so that he could later commit suicide. He denied attempting to rape the victim.

1. Felton claims the trial court erred in granting the state's motion to strike jurors Patel and Czarick for cause. We disagree.

At the conclusion of voir dire, the state moved to strike Patel for cause. During voir dire, Patel had indicated that he would only be able to put his religion and beliefs aside "to a certain point." When asked if he would "put the state at a higher burden to prove the evidence," Patel responded, "[n]ot necessarily, but I would need to convince myself and that would be pretty hard for me I think." Patel stated that it would be difficult to concentrate because of business distractions. However, Patel also agreed that after he heard the evidence and the judge gave him the law to apply he would be able to apply the law to the evidence.

The state moved to remove juror Czarick for cause because she had met Felton and had worked with Felton's mother. Czarick said that knowing Felton's mother put her in a very awkward position. Czarick also indicated that she would try her best to be fair and impartial if she were chosen for the jury, but that "it would be very hard."

> Whether to strike a juror for cause lies within the sound discretion of the trial court. Before a juror is excused for cause, it must be shown that he or she holds an opinion of a defendant's guilt or innocence that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence.[1]

However, "[a] juror may be found disqualified even though he insists he is not biased; therefore, the juror's opinion of his qualification is by no means determinative."[2]

Here, the trial court decided to excuse Patel and Czarick for cause based on their statements as well as additional factors. As to

---

[1] (Citations omitted.) *Spickler v. State*, 276 Ga. 164, 165-166 (3) (575 SE2d 482) (2003).

[2] (Citation omitted.) *Lively v. State*, 262 Ga. 510, 511 (1) (421 SE2d 528) (1992).

Patel, the trial court observed Patel looking at Felton and his defense attorney, and noted that Patel "kind of smiled and was happy" and the trial court "got the feeling that [Patel's] desire is not to be on the jury whether it's legitimate or not, and I don't want that kind of person on a jury." As for Czarick, the trial court noted that Felton's mother was in the courtroom, and Czarick had indicated that setting aside her bias in the case would be difficult because she had worked with Felton's mother. Given that Patel and Czarick indicated they would have difficulty in setting aside their bias in this case, and additional observations made by the trial court tended to show these potential jurors would not be able to set aside their bias, we cannot say the trial court abused its discretion in excusing Patel and Czarick for cause.

Felton relies on cases such as *Rower v. State*,[3] *Hardy v. State*,[4] and *Evans v. State*,[5] in which we found the trial court did not err in refusing to strike prospective jurors for cause notwithstanding statements by the prospective jurors indicating they may have some difficulty in deciding the case in an unbiased manner. Felton contends that if the potential jurors in *Rower*, *Hardy*, and *Evans* were not biased, neither were Patel and Czarick, and the trial court therefore erred in removing Patel and Czarick for cause. We are unpersuaded by Felton's argument. In the cases cited by Felton we affirmed the trial court's exercise of discretion, as we do here. Even if, as Felton contends, the trial court abused its discretion in excusing Patel and Czarick, the abuse of discretion was not harmful to Felton if a fair and unbiased jury was selected, and Felton does not show his jury was not fair and unbiased. "[A] party to a lawsuit has no vested interest in having any particular juror to serve; he is entitled only to a legal and impartial jury. The erroneous allowing of a challenge for cause affords no ground of complaint if a competent and unbiased jury is finally selected."[6]

2. Felton claims that the trial court erred by sentencing him on all counts of the indictment. In particular, Felton claims his convictions for burglary, false imprisonment, and battery merged as a matter of fact into his conviction for attempted rape. Alternatively, he contends that his convictions for false imprisonment and battery merged into his conviction for attempted rape and that his conviction for burglary merged into his conviction for attempted rape. We disagree.

---

[3] 219 Ga. App. 865 (466 SE2d 897) (1995).
[4] 210 Ga. App. 811 (437 SE2d 790) (1993).
[5] 210 Ga. App. 804 (437 SE2d 495) (1993).
[6] (Citation and punctuation omitted.) *Cheeks v. State*, 234 Ga. App. 446, 450 (3) (507 SE2d 204) (1998).

[T]he question of whether there was a factual merger of the crimes is determined by looking to the actual evidence introduced at trial to determine whether a crime is established by proof of the same or less than all the facts required to establish the commission of another crime within the meaning of OCGA § 16-1-6. If the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6.[7]

Here, Felton's convictions for burglary, false imprisonment, and battery were not established by the same or less than all the facts required to convict him for attempted rape.[8] The indictment charged, and the evidence showed, that Felton attempted to rape the victim by "breaking into [the victim's] home, going into her bedroom, lying on top of her, and trying to get her legs apart." Felton's battery conviction was based on striking the victim in the face, which the state was not required to use in showing attempted rape. As for false imprisonment, Felton restrained the victim immediately before he left the house, and after he had attempted to rape the victim, and so the facts showing false imprisonment were not "used up" in proving the attempted rape. Regarding Felton's burglary conviction, the indictment charged and the evidence authorized a finding that Felton entered the victim's home without authority with the intent to commit rape. However, not all of the facts used to convict Felton for burglary were used in support of his attempted rape conviction. While Felton's act of forcibly entering the victim's home was used to prove both the attempted rape and the burglary, the state was also required to show Felton's state of mind in entering the home and that he entered without authority in order to convict Felton for burglary, and these facts were not required to convict Felton for attempted rape.[9] It follows that the state did not "use[ ] up all the evidence that the defendant committed [burglary] in establishing [attempted rape]"[10] so as to require Felton's conviction for burglary to merge into his conviction for attempted rape. Furthermore, "[t]his court has considered the question of merger [where defendant has been convicted of burglary and sexual offenses] and has held the offense of burglary to

---

[7] (Citations and punctuation omitted.) *Wofford v. State*, 226 Ga. App. 487, 489 (1) (486 SE2d 697) (1997).

[8] See *Brewster v. State*, 261 Ga. App. 795, 799 (2) (584 SE2d 66) (2003).

[9] See, e.g., *Carter v. State*, 238 Ga. App. 632, 634 (2) (519 SE2d 717) (1999) (burglary completed upon entering the home and was separate offense from the arson which followed).

[10] *Wofford*, supra, 226 Ga. App. at 489 (1).

be separate and distinct from the sexual offenses committed subsequent to the unlawful entry upon the premises. . . ."[11]

Felton argues, in the alternative, that his convictions for false imprisonment and battery merged into his conviction for attempted rape and that his conviction for attempted rape merged with his conviction for burglary. However, the facts required to convict Felton for these offenses were separate and distinct.[12] The trial court did not err in sentencing Felton for the offenses of burglary, attempted rape, false imprisonment, and battery.

3. Felton claims he received ineffective assistance from his trial counsel and his initially appointed appellate counsel.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable probability, i.e., a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors the result of the proceeding would have been different.[13]

"It is well settled that the arguments underlying a claim for ineffective assistance of counsel must be raised before appeal at the first opportunity, usually on motion for new trial, and the failure to seize that opportunity is a procedural bar to raising that issue at a later time."[14]

At a post-trial hearing, Felton's appellate counsel indicated that she had reviewed the record with regard to ineffective assistance of trial counsel, but decided that it would not be an appropriate allegation. As Felton was afforded the opportunity to raise the issue of ineffective assistance of trial counsel, but elected not to do so, he has waived the issue.[15]

Felton shows that his first appellate counsel withdrew from the case. He now claims that he received ineffective assistance from his first appellate counsel for failing to raise ineffective assistance of his trial counsel. More specifically, he claims that appellate counsel should have raised trial counsel's failure to challenge the grand and

---

[11] *Palmer v. State,* 174 Ga. App. 720 (331 SE2d 77) (1985).

[12] See *Brewster,* supra, 261 Ga. App. at 799 (2) (because terroristic threat conviction was supported by separate and distinct facts from attempted rape conviction, there was no merger of the two offenses).

[13] *Jackson v. State,* 277 Ga. 592, 593 (2) (592 SE2d 834) (2004).

[14] (Citation and punctuation omitted.) *Doss v. State,* 264 Ga. App. 205, 207 (2) (590 SE2d 208) (2003).

[15] See id.

petit jury pools based upon the exclusion of Hispanics and other minorities and upon defects in the manner the jury pools were assembled. Felton contends that because the issue of ineffectiveness of his trial counsel was not raised by his first appellate counsel that no record on the matter was established, and that we should remand the case so that the trial court may hold a hearing on the question of the ineffectiveness of his trial counsel.

Because he waived the issue, we will not remand the case for a hearing on whether Felton's trial counsel was ineffective. Nor will we allow revisiting of the issue of the effectiveness of trial counsel in the guise of Felton's claim that his appellate counsel was ineffective.

> A defendant cannot resuscitate claims of ineffectiveness that are procedurally barred simply by bootstrapping them to a claim of ineffectiveness of appellate counsel. Once a claim is procedurally barred, there is nothing for this Court to review. To hold otherwise would eviscerate the rule requiring that ineffectiveness claims be raised at the earliest practicable moment.[16]

As presented, Felton's ineffective assistance claim provides no basis for review.[17]

4. Felton claims the trial court erred in failing to suppress his in-custody statement to police. We disagree.

Before trial, the court conducted a *Jackson v. Denno*[18] hearing to determine the voluntariness of Felton's videotaped statement. The trial court found the statement to be admissible, and a redacted copy of the videotape was shown to the jury. Felton contends the trial court erred in admitting his statement into evidence because the record does not support the trial court's finding that Felton initiated further conversation with police after requesting counsel. Further, Felton maintains the interviewing detectives violated his right to counsel and made an improper promise of a benefit by attempting to convince Felton it would be better for him to continue his statement after Felton had invoked his right to counsel.

Testimony at the *Jackson v. Denno* hearing shows that Felton asked for an attorney during questioning. The detectives stopped the interview, informed Felton that he was under arrest, and placed him in a holding cell. After the detectives turned off the recorder and gathered the case file, they walked past the holding cell. Felton told

---

[16] (Citation omitted.) *Upshaw v. State*, 257 Ga. App. 199, 202 (4) (570 SE2d 640) (2002).
[17] Id.
[18] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

the detectives he wanted to talk to them, but the detectives told Felton that because he had requested an attorney they could not speak to him without an attorney present. Felton told the detectives he wanted to speak to them now and did not want an attorney. The detectives returned Felton to the interview room and resumed the interview. After further questioning, Felton asked for an attorney, and the detectives stopped the interview for a second time. Felton told the detectives that if they would let him go outside to get some fresh air and smoke a cigarette, he would tell them what happened. Felton was allowed to go outside for about ten minutes, and the detectives resumed the interview after reminding Felton that his *Miranda* rights were still in force.

"A suspect who asks for a lawyer at any time during a custodial interrogation may not be subjected to further questioning by law enforcement until an attorney has been made available or until the suspect reinitiates the conversation."[19] After reviewing the tape of Felton's interview and hearing the testimony of the interviewing detectives, the trial court ruled that Felton waived his *Miranda* rights and gave his statement without hope of benefit or fear of injury, and that after requesting counsel Felton initiated each subsequent discussion with police. "Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal."[20]

In his appellate brief, Felton argues that "the record does not support" the trial court's findings that Felton initiated further conversation with police, but makes no specific reference to the record to justify this position. Contrary to Felton's assertion, the testimony at the *Jackson v. Denno* hearing supports the trial court's finding that Felton voluntarily initiated conversation with the detectives after requesting an attorney. Our review of the videotaped interview does not show otherwise. Therefore, we find the trial court did not err in refusing to suppress Felton's in-custody statement.

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

DECIDED NOVEMBER 15, 2004 — 

*Lenzer & Lenzer, Robert W. Lenzer, Thomas P. Lenzer*, for appellant.

---

[19] (Citation omitted.) *Taylor v. State*, 274 Ga. 269, 271-272 (1) (553 SE2d 598) (2001).
[20] (Citation omitted.) *Grier v. State*, 273 Ga. 363, 365 (2) (541 SE2d 369) (2001).

*Daniel J. Porter, District Attorney, Wesley C. Ross, Assistant District Attorney,* for appellee.