610 S.E.2d 692 (2005)
271 Ga. App. 764
WASHINGTON
v.
The STATE.
No. A04A2369.
Court of Appeals of Georgia.
February 23, 2005.
William P. Nash, Jr., Columbus, for Appellant.
J. Gray Conger, District Attorney, for Appellee.
ADAMS, Judge.
Ron Washington was convicted by a jury of aggravated stalking, malicious confinement of a sane person and false swearing. He *693 appeals following the denial of his motion for new trial, arguing that his trial counsel was ineffective and that his convictions for malicious confinement and false swearing merged.
The evidence, construed to support the verdict, shows that Washington was first ordered to stay away from the victim after he was arrested following a domestic dispute. Washington entered a guilty plea to a charge of simple battery stemming from that incident, and at his sentencing on September 23, 2002, he was again ordered to stay away from the victim and to leave the county. However, when Washington was released from jail on that date, he immediately returned to the trailer park where the victim lived, and was arrested for violating the stay away order. When Washington was released after that incident, he went to court and swore out a warrant for the victim, saying that she had broken out his windshield. However, at the time the victim was supposedly committing this crime, she was meeting with an assistant from the solicitor's office and a victim-witness advocate. Washington was arrested for giving false information to a police officer, and taken back to jail. The solicitor also issued a warrant for Washington based on violating his probation.
Washington was subsequently released on November 7, 2002. After he was released on that date, he went to the probate court and executed an affidavit, under oath, that based on his knowledge of the victim within the preceding 48 hours, she was suicidal and was using crack cocaine and refusing to get treatment. The affidavit contained another signature that was illegible, and this person was never identified, although there was some evidence that the person was posing as the victim's father, who was deceased.
The probate court issued an involuntary treatment order, and the victim was picked up at work and transported to West Central Georgia Regional Hospital. The victim testified that she had not seen Washington since his release from jail, or while he was incarcerated. The victim further testified that she did not use drugs, and that she had just passed a drug test the week before when she started a new job. The victim was kept under suicide watch until she was released the next afternoon. Both the assistant solicitor and the judge who had been assigned the original case involving Washington went to the probate court and informed the court that the affidavit was false and that the victim should be released.
After he left the probate court on November 7, Washington went back to the trailer park where the victim lived. Washington first went to the home of the victim's babysitter and demanded that she turn the victim's children over to him, threatening to kill her and her family if she did not.[1] The babysitter and her husband refused, and Washington returned with two sheriff's deputies, who questioned the children, and then refused to turn them over to him.
On that same day, another neighbor, who had been asked by the victim to watch her trailer because she knew Washington was being released, saw Washington and another man go into the victim's trailer. The police were called, and Washington was apprehended a short distance from the trailer. Washington had a flat head screwdriver in his pocket at the time of his apprehension. The manager for the trailer park testified that the striker plate on the door had been broken, and the plunger for the knob on the door had been jammed so that it would not release. Cat food and other substances were scattered throughout the trailer, and the victim's clothes, which were folded in a basket when she left for work that day, had been ripped and torn. Washington was again arrested, and charged with multiple crimes stemming from his activities that day.
1. Washington first contends that his trial counsel was ineffective for failing to challenge the constitutionality of OCGA § 16-5-43,[2] which defines the crime of malicious confinement of a sane person, on the basis that it is vague.

*694 As we recently noted, however, "the standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense." [Washington] has not cited, and we have not found, any case addressing a similar constitutional challenge to OCGA § [16-5-43]. Trial counsel's failure to raise this novel legal argument does not amount to ineffective assistance of counsel.
(Footnotes omitted.) Hughes v. State, 266 Ga.App. 652, 655(3)(a), 598 S.E.2d 43 (2004).
2. Washington next contends that his trial counsel was ineffective because he did not present a defense to the malicious confinement charge. In Washington's brief on appeal, he admits that he "clearly did the act of swearing an affidavit to have the victim taken into custody and evaluated for her self-destructive use of cocaine" and that without some evidence of the victim's chronic use of cocaine, "his fate at trial was sealed." Washington also contends that "at the very least" his counsel should have hired an expert to testify that the chronic use of cocaine was not "of natural and normal mental condition, healthy in mind" in order to rebut the presumption of sanity of the victim. Washington also argues that his trial counsel was ineffective for failing to contact the other person who signed the affidavit.
First, the record shows that Washington was the only person who knew the identity of the second person whose illegible signature appears on the affidavit, but that he never disclosed the identity of this person to his trial counsel. And trial counsel testified that he "went over all the witnesses that [Washington] asked me to try to contact." Trial counsel also testified that in his opinion, which he conveyed to Washington, the relevant consideration was what Washington knew or could show concerning the victim's mental state at the time he had her confined, but that Washington had not seen the victim for several months, and could not have observed the victim on the date or during the time frame stated in the affidavit because he was in fact incarcerated at that time. Under the circumstances that existed here, we fail to see how hiring an expert to testify about the detrimental effects of cocaine use, as Washington argues his trial counsel should have done, would have been availing.
To prevail on his ineffectiveness claim, Washington must show both that counsel's performance was deficient, and that but for that deficient performance, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Washington has shown neither. The evidence supports the trial court's ruling denying Washington's claim of ineffective assistance of counsel.
3. Lastly, Washington contends that his convictions for malicious confinement and false swearing merged, and thus the trial court erred by sentencing him separately for each offense.
The offense of false swearing is defined in OCGA § 16-10-71 as follows:
(a) A person to whom a lawful oath or affirmation has been administered or who executes a document knowing that it purports to be an acknowledgment of a lawful oath or affirmation commits the offense of false swearing when, in any matter or thing other than a judicial proceeding, he knowingly and willfully makes a false statement.
Malicious confinement of a sane person is defined in OCGA § 16-5-43:
A person who maliciously causes the confinement of a sane person, knowing such person to be sane, in any asylum, public or private, shall, upon conviction thereof, be punished by imprisonment for not less than one nor more than ten years.
It can be readily seen from the foregoing that the two crimes are separate and distinct and did not merge as a matter of law. Washington argues, however, that the crimes merged as a matter of fact.
Offenses merge as a matter of fact pursuant to OCGA § 16-1-6(1) if one of them is established by proof of the same or less than all the facts required to prove the other. OCGA § 16-1-7(a) prohibits multiple convictions for the same conduct. However, in order to determine if the merger doctrine applies, we must examine *695 the facts alleged in the indictment or accusation as well as the evidence adduced at trial.
(Citation and punctuation omitted.) Parker v. State, 249 Ga.App. 530, 549 S.E.2d 154 (2001).
As with any factual merger question, the dispositive issue is whether the State "used up" its evidence in proving the crime: "The actual evidence test, in effect, means that if the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6(1)." [Cits.]
Ruffin v. State, 252 Ga.App. 289, 291(2), 556 S.E.2d 191 (2001).
The indictment here charged that Washington committed the crime of malicious confinement when he "maliciously cause[d the] confinement of [the victim], a sane person, in a Public asylum, ... knowing said person to be sane...." As to the crime of false swearing, the indictment alleged that Washington
did unlawfully knowingly and willingly execute a document, to wit: a affidavit attesting to the alleged mental illness of [the victim], with the intent to obtain an emergency committal order for the Probate Court ... knowing that it purports to be an acknowledgement of a lawful oath or affirmation, containing a false statement, to-wit: that he had knowledge within the preceding 48 hours that the [victim] was addicted to crack cocaine and refused treatment, and that she was attempting to kill herself daily....
The State proved the elements of this offense by showing that Washington had just been let out of jail and was actually incarcerated during the 48 hours preceding the execution of the affidavit, and thus he had no knowledge of the victim's mental state during the preceding 48 hours or at any time during his incarceration. The crime of malicious confinement, on the other hand, required proof of malice and knowledge that the victim was sane, but did not require the State to show that Washington made false statements under oath in the affidavit. The State presented ample evidence as to both these elements, apart from the execution of the false affidavit. Thus, the crimes did not merge as a matter of fact here since each crime was proved by distinct elements absent proof of the other, and the trial court did not err in sentencing Washington for both crimes. Felton v. State, 270 Ga.App. 449, 453(2), 606 S.E.2d 649 (2004); Parker, 249 Ga.App. at 531, 549 S.E.2d 154.
Judgment affirmed.
RUFFIN, C.J., and BERNES, J., concur.
NOTES
[1] Washington was neither the biological nor legal father of the children.
[2] The crime of malicious confinement of a sane person in an asylum was first enacted in 1890. Ga. 1890-91, p. 237, § 4. There are no reported appellate decisions concerning this statute.