In the Supreme Court of Georgia

Decided:  March 7, 2016

S15A1580.  AMOS v. THE STATE.

HUNSTEIN, Justice.

Appellant Deuntaie Amos was convicted of felony murder and related

offenses in connection with the January 2010 shooting death of Richard Saylors.

Amos now appeals, contending that the evidence was insufficient; that the trial

court erred in denying his pre-trial immunity motion and his as-applied

constitutional challenge to Georgia's weapons carry license statute; and that the

trial court improperly instructed the jury regarding voluntary manslaughter.

Finding no error, we affirm.[1]

---

[1]Amos was indicted by a Fulton County grand jury in May 2010 for malice murder, felony murder, aggravated assault, and possession of a firearm during commission of a felony.  At the conclusion of a jury trial held in December 2011, Amos was acquitted of malice murder but found guilty of the remaining offenses. The trial court sentenced Amos to life imprisonment for felony murder and a five-year consecutive term for firearm possession; the aggravated assault count merged into the felony murder count.  Amos filed a timely motion for new trial on January 9, 2012, which he amended in January and March of 2014.  Following a hearing in June 2014, the trial court denied the new trial motion on July 22, 2014.  Amos filed a notice of appeal on August 12, 2014.  The appeal was docketed to the September 2015 term of this Court and was thereafter submitted for decision on the briefs.

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. In the early morning hours of January 30, 2010, Appellant Deuntaie Amos and others were socializing and drinking at the College Park apartment of Sharrell Moore when tensions developed between Amos and victim Saylors. Saylors, a loud and boisterous presence, had been drinking and using cocaine on the evening in question, the combination of which, according to expert testimony, often makes an individual restless and agitated. Moore, whose children were asleep in another room of the apartment, told Saylors to quiet down on several occasions, and Amos repeated Moore's admonition, stating that Saylors and his companions would have to leave if he could not "tone it down."

As the evening progressed, tensions mounted between Amos and Saylors, and Amos made several "verbal jabs" directed at Saylors. At one point, Amos told one of Saylors' companions to "get your boy, get your boy, I don't want nothing to happen to him." At some point thereafter, Amos left the apartment for a period of time and, when he returned, he was wearing a jacket he had not previously been wearing and conspicuously failed to remove his hands from his pockets. Amos again told Saylors' friend to "get your boy, I don't want nothing

to happen to him."

Ultimately, after continued bickering between Amos and Saylors – and continued attempts by Moore to quiet her guests and in particular Saylors – Moore ordered everyone to leave. Saylors' girlfriend led the group out, admonishing Saylors to follow. As Saylors and his companions walked out the door, Amos remarked to Saylors, "so you do everything your b---- tell[s] you to do," at which point Saylors turned and approached Amos. Saylors and Amos began to tussle, interlocking in a "bearhug" position, from which Saylors wrangled Amos into a headlock. Less than a minute into the struggle, Amos fired his gun into Saylors' abdomen. Saylors ran out of the apartment, collapsed in the parking lot, and died at the scene. As the witnesses reacted and summoned help, Amos hid the gun and shell casing that had ejected from it, both of which were later found by investigators, and then fled the apartment.

Amos has never denied shooting Saylors but has maintained consistently that he did so in self-defense. At trial, he testified that it was Saylors who had escalated the confrontation, stepping out the door as if to leave and then turning back to strike Amos from behind and place him in a headlock. He testified further that the headlock rendered him incapable of breathing or talking and

3

made him begin to black out. At that point, Amos testified, he "felt like [his] life was at stake." The State, however, adduced testimony that the headlock utilized on Amos was unlikely to have been fatal or even nearly fatal, and that Amos, after being released from the headlock, stood up without gasping for air. Amos also admitted that he carried his gun that night already cocked and ready to be fired, save release of the safety lock.

1. The evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Amos was guilty of felony murder, aggravated assault, and firearm possession during the commission of a crime, Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), and that the shooting was not a justifiable act of self-defense, Sifuentes v. State, 293 Ga. 441 (1) (746 SE2d 127) (2013). A person is justified in using deadly force only if he "reasonably believes that such force is necessary to prevent death or great bodily injury to himself" and, inter alia, is not himself the aggressor in the deadly confrontation. OCGA § 16-3-21 (a), (b) (3). The jury here was authorized to conclude that Amos fired his gun not out of a reasonable belief that his life was in danger but rather out of aggression towards Saylors. Of particular note in this regard is the evidence that Amos left Moore's

4

apartment during his simmering feud with Saylors and returned wearing a jacket in which he secreted his gun. Though Amos claimed to have feared for his life when he was ensnared in Saylors' headlock, the jury was authorized to either disbelieve Amos' claim of mortal fear or to reject the reasonableness thereof. See, e.g., Baldwin v. State, 263 Ga. 524 (2) (435 SE2d 926) (1993) (though defendant adduced evidence that his killing was justified by reasonable fear, jury was authorized to credit State's evidence to the contrary); see also Sifuentes, 293 Ga. at 443 (it is jury's role to determine credibility of witnesses and resolve inconsistencies in testimony in assessing a defendant's claim of self-defense). In sum, the evidence was sufficient to sustain Amos' convictions.

2. Amos contends that the trial court erred in denying his pre-trial motion for immunity. OCGA § 16-3-24.2 provides for immunity from prosecution for a person who uses threats or force in self-defense. However, at the time of the trial court's immunity ruling, immunity was not available if "in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under Part 2 or 3 of Article 4 of Chapter 11 of [Title

5

16 of the Georgia Code]." OCGA § 16-3-24.2 (2011).[2] A defendant seeking immunity bears the burden of establishing his claim of self-defense by a preponderance of the evidence. Bunn v. State, 284 Ga. 410 (3) (667 SE2d 605) (2008).[3] "In reviewing the denial of motion for pretrial immunity, we must view the evidence in the light most favorable to the trial court's ruling and accept the trial court's findings of fact and credibility determinations if there is any evidence to support them." Sifuentes, 293 Ga. at 444.

At the pre-trial immunity hearing, both Amos and the State presented testimony similar to that adduced at trial regarding the events surrounding the shooting. In addition, the State adduced evidence that, while the gun used to kill Saylors was lawfully registered to Amos, Amos had never obtained a weapons

---

[2]In 2014, the immunity statute was amended as part of the Safe Carry Protection Act to delete the "or 3" from the phrase "Part 2 or 3" within the exception for unlawful carrying or possession of a weapon. See Ga. L. 2014, p. 599, 602-603, § 1-3.

[3]The fact that we have already affirmed the jury's rejection of Amos' claim of self-defense neither precludes our review of the trial court's pre-trial immunity ruling nor predetermines the outcome thereof. See Sifuentes, 293 Ga. at 444, n.3 (noting that evidence presented at immunity hearing may differ from that presented at trial); see also Hipp v. State, 293 Ga. 415 (746 SE2d 95) (2013) (superior court is authorized to reconsider its denial of pre-trial immunity even after jury has rejected defendant's self-defense claim at trial).

carry license. Amos did not contest this point. The trial court ultimately concluded that Amos was not entitled to immunity because, inter alia, he was carrying a weapon without a license in violation of OCGA § 16-11-126 (prohibiting, with limited exceptions, the carrying of a weapon outside one's own property, motor vehicle, or place of business without a valid license) and OCGA § 16-11-129 (establishing requirements for the issuance of weapons carry licenses).

Though he did not do so at the immunity hearing, nor at any time prior to trial or the entry of judgment, Amos argued in his motion for new trial that the weapons carry licensing scheme is unconstitutional under recent United States Supreme Court Second Amendment jurisprudence,[4] insofar as it prohibits the carrying of a firearm without a license outside the home for the purpose of self-defense. According to Amos, the abridgment of his statutory entitlement to immunity based on his violation of an unconstitutional licensing statute was itself a violation of his Second Amendment rights and was, therefore, in error.

---

[4]See District of Columbia v. Heller, 554 U. S. 570 (128 SCt 2783, 171 LE2d 637) (2008) (holding that Second Amendment protects the individual right to bear arms for self-defense in the home); see also McDonald v. City of Chicago, 561 U. S. 742 (130 SCt 3020, 177 LE2d 894) (2010) (applying Second Amendment to the States).

In its order denying Amos' new trial motion, the trial court rejected Amos' constitutional challenge on its merits – albeit summarily – and Amos now seeks our review of that issue.

We cannot, however, entertain this constitutional claim, because Amos failed to raise the issue in a timely manner below. "We have consistently adhered to th[e] requirement that a constitutional challenge must be made as soon as possible." Hardeman v. State, 272 Ga. 361, 361 (529 SE2d 368) (2000). This rule is designed to prevent a party from "ignor[ing] what he thinks to be an injustice, tak[ing] his chance on a favorable verdict, and complain[ing] later." (Quotation marks and citations omitted.) Id. We have thus held repeatedly that a constitutional attack on a criminal statute may not be raised for the first time on motion for new trial. See, e.g., Jones v. State, 290 Ga. 670 (3) (725 SE2d 236) (2012) (constitutional attack on sentencing statute may not be raised for the first time on motion for new trial); Perez-Castillo v. State, 275 Ga. 124 (562 SE2d 184) (2002) (constitutional attack on substantive criminal statute must be raised before a verdict is returned); see also Kolokouris v. State, 271 Ga. 597 (1) (523 SE2d 311) (1999) (declining to decide merits of as-applied Second Amendment challenge to reckless conduct statute because such

8

challenge was not raised until motion for new trial). Even where an untimely constitutional challenge is addressed on its merits by the trial court, this Court will decline to entertain the issue on appeal. See Brinkley v. State, 291 Ga. 195 (728 SE2d 598) (2012) (constitutional issue waived on appeal due to defendant's failure to raise it until motion for new trial, notwithstanding the trial court's disposition of the issue on its merits).

Thus, because Amos raised his Second Amendment challenge for the first time on motion for new trial, this claim was waived in the trial court and is not subject to review on appeal. Given the undisputed evidence that Amos did not possess a weapons carry license and was thus in violation of OCGA § 16-11-126 insofar as he was carrying a weapon without such license in a place other than his own property, motor vehicle, or place of business, see id. at (a), (h) (1), the trial court did not err in denying Amos' claim to immunity under OCGA § 16-3-24.2 (2011).

3. Anticipating the possibility that his constitutional challenge would be deemed waived, Amos contends that trial counsel rendered ineffective assistance in failing to raise this issue in a timely fashion. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was

professionally deficient and that but for such deficient performance there is a reasonable probability that the result of the trial would have been different. Strickland v. Washington, 466 U. S. 668, 685, 695 (104 SCt 2052, 80 LE2d 674) (1984); Wesley v. State, 286 Ga. 355 (3) (689 SE2d 280) (2010). To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). If the defendant fails to satisfy either the "deficient performance" or the "prejudice" prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d 359) (2012).

Amos contends that trial counsel performed deficiently by failing to assert a Second Amendment challenge to the weapons carry license statute insofar as it was applied to deprive him of his statutory right to immunity under the circumstances of this case. However, neither the U.S. Supreme Court nor this Court has yet determined that requiring a license to carry a concealed firearm outside the home for self-defense is an impermissible infringement on citizens' Second Amendment rights. See Heller, 554 U. S. at 635 (invalidating District

10

of Columbia statute to the extent it banned handgun possession *in the home* and prohibited citizens from rendering operable, for self-defense, any lawful firearm *in the home*); Hertz v. Bennett, 294 Ga. 62, 66 (751 SE2d 90) (2013) (upholding weapons carry license statute against as-applied challenge, finding it to be a reasonable means of achieving the important government objective of promoting public safety and noting in particular that it does not burden the "core Second Amendment right to possess a firearm for self-defense in one's home"); Strickland v. State, 137 Ga. 1 (72 SE 260) (1911) (upholding against Second Amendment challenge a 1910 statute requiring a license to possess or carry a revolver); see also Nunn v. State, 1 Ga. 243, 251 (1846) (recognizing that the legislature may properly place some limits on the carrying of weapons so long as such limits do not "deprive the citizen of his *natural* right of self-defence"). To the extent Amos asserts that Second Amendment jurisprudence is headed in this direction, even assuming arguendo he were correct on this point, "there is no requirement for an attorney to prognosticate future law in order to render effective representation." Williams v. Rudolph, 298 Ga. 86, 89 (777 SE2d 472) (2015). Accord Rickman v. State, 277 Ga. 277 (2) (587 SE2d 596) (2003) (there exists no general duty on the part of counsel to anticipate changes in the

11

law).

Accordingly, we cannot conclude that trial counsel performed deficiently in failing to assert a Second Amendment challenge of the type Amos now raises, and Amos' ineffectiveness claim, therefore, must fail.

4. In his final enumeration, Amos contends that the trial court erred with regard to the particular instruction it gave the jury as to voluntary manslaughter. However, not only did the instruction track the pattern charge on voluntary manslaughter, see Suggested Pattern Jury Instructions, Volume 2: Criminal Cases, § 2.10.41 (4ᵗʰ ed. 2010), but it also actually worked to Amos benefit, by offering the jury the option of convicting him of the lesser offense of voluntary manslaughter despite the defense's focus on self-defense, as opposed to heat of passion, as the trigger for the shooting. See generally Worthem v. State, 270 Ga. 469 (2) (509 SE2d 922) (1999) (noting that "the provocation necessary to support a charge of voluntary manslaughter is markedly different from that which will support a self-defense claim"). This enumeration is, thus, without merit.

Judgment affirmed. All the Justices concur, except Nahmias, J., who concurs in judgment only as to Division 2 .