In the Supreme Court of Georgia

Decided: July 5, 2016

S16A0275.  PROPST v. THE STATE.

HUNSTEIN, Justice.

Appellant Scottie Propst appeals his convictions and sentences for robbery

and other related offenses.   In his seven enumerations of error, Propst

challenges, among other things, the constitutionality of OCGA § 16-3-24.2.

Propst claims, as he did below, that OCGA § 16-3-24.2 violates his right to

equal protection under the Georgia and United States Constitutions.   For the

reasons that follow below, and finding no additional error, we affirm.[1]

---

[1] In December 2011, a Walton County grand jury indicted Propst on the following thirteen charges: count one, armed robbery (Crankshaw); count two, armed robbery (Parker); count three, aggravated battery (Smith); count four, aggravated assault (Smith); count five, aggravated assault (Crankshaw); count six, aggravated assault (Parker); count seven, possession of a firearm by a convicted felon; count eight, possession of a firearm during the commission of a felony (armed robbery of Crankshaw); count nine, possession of a firearm during the commission of a felony (armed robbery of Parker); count ten, possession of a firearm during the commission of a felony (aggravated battery of Smith); count eleven, possession of a firearm during the commission of a felony (aggravated assault of Smith);  count twelve, possession of a firearm during the commission of a felony (aggravated assault of Crankshaw); and count thirteen, possession of a firearm during the commission of a felony (aggravated assault of Parker).

1. In two enumerations of error, Propst contends that the evidence presented at trial was insufficient to support his convictions. Viewed in a light most favorable to the jury's verdict, the evidence at trial established as follows. In October 2011, Propst's co-defendant, Adam Hacker, arranged to purchase roxycodone pills from Yvonne Parker and Ronya Crankshaw at the ladies' residence in Monroe, Georgia. Hacker, Propst, and a third party, drove from North Carolina to Monroe to complete the transaction.

Hacker testified that he and Propst, who was in need of money, devised a plan to steal the pills and money from Parker and Crankshaw. Upon their

---

Following a trial conducted February 24-26, 2014, a jury found Propst guilty of two counts of robbery (as lesser-included offenses of armed robbery in counts one and two) and found him guilty as charged with respect to counts three, four, five, ten, eleven, and twelve. On March 7, 2014, the trial court sentenced Propst as follows: count one, twenty years confinement; count two, twenty years confinement concurrent with count one; count three, twenty years confinement concurrent with count one; count five, ten years probation consecutive to count one; count seven, five years confinement concurrent with count three; count ten, five years probation, consecutive to count five; and count twelve, five years probation, consecutive to count ten. The trial court merged all other remaining offenses.

Propst filed a motion for new trial on March 10, 2014, which was subsequently amended four times on January 26, 2015, February 6, 2015, April 28, 2015, and May 11, 2015. The trial court held two hearings on Propst's motion for new trial on April 28, 2015 and June 30, 2015, and denied the motion in an order filed September 8, 2015. Propst filed a notice of appeal to this Court on September 24, 2015. The case was docketed to the January 2016 term and was thereafter submitted for decision on the briefs.

arrival at the residence, Hacker handed Propst a .45 Taurus pistol and told him to remain in the car and "stay out of sight." Despite not having enough money to buy the requested amount of pills, Hacker went inside to conduct the drug transaction. Eventually, Hacker left the residence and returned to the vehicle under the pretense of retrieving additional cash. Once at the vehicle, Hacker and Propst reviewed their plan to rob Parker and Crankshaw; both men returned to the residence where, Hacker testified, he grabbed the pills and the money.

The two men ran out of the residence and attempted to drive away, but they got lost in the subdivision. Crankshaw and her friend, Silas Smith, gave chase in order to ascertain the tag number on Hacker's vehicle. They eventually caught up with the two men, who were still trying to leave the subdivision. According to Hacker, when Crankshaw and Smith caught up with them in a cul-de-sac, Propst climbed out of the passenger's side window and shot at the oncoming vehicle. Smith was shot in the neck, paralyzing him from the chest down.

The men drove off and, on their way back to North Carolina, they discarded the gun in a creek and agreed to tell law enforcement that Crankshaw shot at them as they were driving away.

3

Hacker and Propst were identified from photo lineups by Cranshaw and Smith. A .45 caliber shell casing was located at the intersection where the shooting occurred, and law enforcement recovered a large sum of money and the stolen pill bottles from Hacker's girlfriend. After his arrest, Hacker led law enforcement to the gun, which was later matched to both the shell casing found in the street and the bullet that struck Smith. Law enforcement subsequently searched the vehicle Hacker drove on the night of the incident and located a muzzle flash powder burn on the top passenger's side of the car.

Royna Crankshaw corroborated many portions of Hacker's testimony. According to Crankshaw, Hacker initially entered the residence alone for a drug transaction with Parker; he exited the residence to go back to his car; and, Propst and Hacker returned, stole the pills and cash, fled the scene and then shot at Cranshaw and Smith before leaving the neighborhood.

Finally, the jury also heard Propst's custodial statement wherein he told law enforcement that: he and Hacker drove from North Carolina to Georgia for a pill buy; he stayed in the car at Hacker's advice while Hacker entered the residence to conduct the drug transaction; Hacker came back to the car to get Propst; the pair entered the house together; Propst grabbed the pills and cash;

4

the pair ran to the car and fled the scene; they got lost in the subdivision; and, that Cranshaw gave chase in her car. Initially, Propst denied having a gun in his possession, but he later admitted to having a gun, pulling the trigger from the passenger's side of the car, plotting with Hacker to dispose of the weapon, and then confirming their stories in case they were contacted by police.

*(a) Sufficiency of the Evidence for the Robbery Convictions*

Propst first argues that his two convictions for robbery as lesser included offenses of armed robbery are not supported by sufficient evidence. Propst contends that the convictions are based solely on Hacker's uncorroborated testimony that Propst knowingly and actively participated in the robberies. OCGA § 24-14-8 states that "[t]he testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness shall not be sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness . . . ." Id. Furthermore, we have previously held that,

> sufficient corroborating evidence may be circumstantial, it may be
> slight, and it need not of itself be sufficient to warrant a conviction
> of the crime charged. It must, however, be independent of the

5

accomplice testimony and must directly connect the defendant with the crime, or lead to the inference that he is guilty. Slight evidence from an extraneous source identifying the accused as a participant in the criminal act is sufficient corroboration of the accomplice to support a verdict. [Cits]. Corroboration of only the chronology and details of the crimes is not sufficient, and there must be some independent evidence tending to show that the defendant himself was a participant in the crimes. [Cits.]

(Citations and punctuation omitted). Taylor v. State, 297 Ga. 132, 134 (2) (772 SE2d 630) (2015).[2]

Hacker's testimony that Propst knowingly participated in the robberies was corroborated both by Cranshaw's testimony, Propst's own post-incident statement, and the physical evidence gathered by law enforcement. Although the jury may have discredited the portion of Cranshaw's testimony regarding Propst brandishing a weapon during the robbery, the weight to be given to her testimony as a whole was a matter for the jury to decide. Id. at 135. Accordingly, the evidence was sufficient to enable a rational trier of fact to find Propst guilty beyond a reasonable doubt of all of the charges for which he was

---

[2] Because Propst's trial was held after January 1, 2013, Georgia's new Evidence Code is applicable. See Ga. L. 2011, p. 99 § 1. We note, however, that the provisions of former OCGA § 24-4-8 were carried forward into the new evidence code, and our decisions interpreting that provision remain good law. See Bradshaw v. State, 296 Ga. 650 (2) (769 SE2d 892) (2015); McKibbins v. State, 293 Ga. 843, n.9 (750 SE2d 314) (2013).

convicted, including the two counts of the lesser included offense of robbery. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LEd2d 560) (1979).

*(b) Sufficiency of the Evidence as to Venue*

Propst also argues that his aggravated assault, aggravated battery and weapons convictions cannot stand because the State failed to prove venue for these charges beyond a reasonable doubt.

Similar to reviewing a challenge to the sufficiency of the evidence, we view the evidence of venue "in a light most favorable to support the verdict and determine whether the evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the crime was committed in the county where the defendant was indicted." Chapman v. State, 275 Ga. 314, 317 (4) (565 SE2d 442) (2002). It is well established that a criminal action must be tried in the county in which the crime was committed. Ga. Const. 1983, Art. VI, Sec. II, Para. VI; OCGA§ 17-2-2 (a). The State can establish venue by both direct and circumstantial evidence. See Chapman, 275 Ga. at 317; Jones v. State, 272 Ga. 900, 902-903 (2) (537 SE2d 80) (2000). If, in a case not involving murder, "it cannot be determined in what county a crime was committed, it shall be considered to have been committed in any county in

7

which the evidence shows beyond a reasonable doubt that it might have been committed." Twitty v. State, 298 Ga. 204, 206 (2) (779 SE2d 298) (2015) (citing OCGA § 17-2-2 (h)).

Here, while many witnesses testified that the initial robberies of Crankshaw and Parker occurred at 1422 Virginia Way, Monroe, Walton County, Georgia, the evidence established that the actual shooting occurred at the intersection of Virginia Way and Shadwell Lane, "just down the street" from, and in the same neighborhood as, that residence. Establishing the venue of a near-by site, in this case the residence where the robberies occurred, does not establish the venue for the remainder of the crimes. See Chapman, 275 Ga. at 317; Jones, 272 Ga. at 903-904. However, while there is no direct evidence that the intersection where the shooting occurred was located in Walton County, there is an abundance of circumstantial evidence from which the jury could have concluded beyond a reasonable doubt that the remainder of the crimes occurred in that county. Specifically, the jury heard evidence that numerous officers from the Walton County Sheriff's Office responded to and investigated the scene of the robberies and the intersection where the shooting occurred. See Chapman, 275 Ga at 317-318 ("In light of the well-settled principle that public officials are

8

believed to have performed their duties properly and not to have exceeded their authority unless clearly proven otherwise . . . the jury was authorized to find the police officer acted within the territorial jurisdiction in which he testified he was employed."). Compare <u>Jones</u>, 272 Ga at 903-904 (evidence of venue insufficient because City of Atlanta officers who responded to and investigated crime patrolled both Fulton and DeKalb counties). Moreover, evidence was collected from the intersection by the criminal investigative unit of the Walton County Sheriff's Office, logged on property receipts from the Walton County Sheriff's Office, and subsequently kept in their evidence room. Additionally, Walton County Sheriff's Office forms were used for Crankshaw's photo-line up identification of Propst, and the form used to Mirandize Propst was signed by two Walton County detectives. See <u>State v. Prescott</u>, 290 Ga. 528, 529 (722 SE2d 738) (2012) (County Sheriff's Office <u>Miranda</u> waiver form is evidence of venue). Consequentially, there is sufficient evidence from which the jury could have concluded beyond a reasonable doubt that the crimes were committed in Walton County.

2. Propst filed a pre-trial motion to dismiss his indictment, claiming that

he was immune from prosecution pursuant to former OCGA § 16-3-24.2[3] because he was acting in self-defense at the time of the alleged crimes. The State objected, arguing that Propst was not entitled to pre-trial immunity because he was a convicted felon at the time of the shooting. The parties filed briefs prior to the immunity hearing focusing, in part, on whether former OCGA § 16-3-24.2 violated Propst's right to equal protection under both the Federal and State Constitutions. Applying a rational basis test, the trial court found that the immunity statute did not violate Propst's equal protection rights. Further, after hearing evidence on Propst's motion to dismiss, the trial court denied the motion, finding that Propst was "not entitled to dismissal and immunity from

---

[3] Because this case was tried prior to the Legislature's amendment of the immunity statute on July 1, 2014, the 2006 version of the statute applies. That Code section provides in pertinent part:

> A person who uses threats or force in accordance with Code Section . . . 16–3–21 [in defense of self or others] shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under Part 2 or 3 of Article 4 of Chapter 11 of [Title 16 of the Georgia Code].

OCGA § 16-3-24.2 (2011). In 2014, the immunity statute was amended as part of the Safe Carry Protection Act to delete the "or 3" from the phrase "Part 2 or 3" within the exception for unlawful carrying or possession of a weapon. See Ga. L. 2014, p. 599, 602–603, § 1–3.

prosecution as contemplated by OCGA § 16-3-24.2."

Propst argues now, as he did below, that the trial court erred in upholding the former immunity statute as constitutional. Namely, Propst claims that the trial court should have reviewed his Equal Protection claims under a strict scrutiny standard because former OCGA § 16-3-24.2 infringed upon his fundamental right of self-defense pursuant to McDonald v. City of Chicago, 561 U.S. 742 (130 SCt 3020, 177 LE2d 894) (2010), by precluding him, as a convicted felon, from seeking immunity from prosecution. This claim is without merit.

"'Because the protection provided in the Equal Protection Clause of the United States Constitution is coextensive with that provided in Art. I, Sec. I, Par. II of the Georgia Constitution of 1983, we apply them as one.'" (Citation omitted.) Favorito v. Handel, 285 Ga. 795, 797 (1) (b) (684 SE2d 257) (2009). "'In deciding an equal protection challenge, the level of scrutiny applied by the court depends on the nature of the distinction drawn by the legislation at issue. If neither a suspect class nor a fundamental right is implicated, the most lenient level of judicial review – rational basis – applies.'" (Citation omitted.) Harper v. State, 292 Ga. 557, 560 (1) (738 SE2d 584) (2013). "The constitutionality of

11

a statute presents a question of law. Accordingly, we review a trial court's holding regarding the constitutionality of a statute de novo." Rhodes v. State, 283 Ga. 361, 362 (659 SE2d 370) (2008).

The United States Supreme Court's decisions in District of Columbia v. Heller, 554 U.S. 570 (128 SCt 2783, 171 LEd2d 637) (2008), and McDonald, supra, address an individual's right to possess and use a firearm in self defense inside one's home. Heller guaranteed "law-abiding, responsible citizens" in the District of Columbia the right "to use arms in defense of hearth and home," 554 U.S. at 635, and McDonald extended that right to the states through the Fourteenth Amendment, 561 U.S. at 742.

The extent to which Second Amendment protections apply outside the home, and whether some or all convicted felons are unprotected by the Second Amendment, are unsettled questions. See, e.g., Amos v. State, ___ Ga. ___ (783 SE2d 900, 905 (2016); State v. Craig, 826 NW2d 789, 794-798 (Minn. 2013). But even assuming that Propst had a fundamental right based on the Second Amendment to assert, that right is not implicated by the immunity statute, which merely provides a pre-trial process as a matter of legislation, not of constitutional requirement. The immunity statute did not prevent Propst from

12

engaging in acts of alleged self-defense, and it does not prevent him from trying to argue self-defense at trial.

Further, Propst's status as a convicted felon does not make him a member of a suspect class triggering strict scrutiny analysis. See Quarterman v. State, 282 Ga. 383 (1) (651 SE2d 32) (2007) (explaining no strict scrutiny analysis because convicted felons not members of a suspect class); Drew v. State, 285 Ga. 848 (2) (684 SE2d 608) (2009) (finding incarcerated inmates are not members of a suspect class); Rooney v. State, 287 Ga. 1 (3) (690 SE2d 804) (2010) (persons sentenced under OCGA § 17-10-10 (a) are not members of a suspect class). Because neither a fundamental right is implicated, nor is Propst a member of a suspect class, the trial court properly applied the rational basis test.

Further, Propst failed to show that the immunity statute did not meet the rational basis test. As we have previously explained,

> There are two prongs to an evaluation of legislation under an equal protection claim . . . and, as the legislation is presumptively valid, the claimant has the burden of proof as to both prongs. Initially, the claimant must establish that he is similarly situated to members of the class who are treated differently from him. Next, the claimant must establish that there is no rational basis for such different treatment.

(Citation omitted.)  Reed v. State, 264 Ga. 466, 466 (448 SE2d 189) (1994). Under the first prong,  "[t]he proper inquiry is whether the statute applies equally to all those accused under it, and therefore does not create disparate classifications among similarly situated persons."  Id.

Former OCGA § 16-3-24.2 did not preclude only convicted felons from asserting pre-trial immunity.  Rather, it precluded anyone, convicted felons and non-felons alike, from asserting pre-trial immunity who unlawfully carried or possessed a weapon in violation of either Part 2 or 3 of Chapter 11 Article 4 when an incident occurred.  This included violations of OCGA §§ 16-11-127 & 130.2 (prohibiting carrying a weapon in unauthorized locations); § 16-11-132 (prohibiting possession of a handgun by a person under 18); and, § 16-11-134 (making it unlawful to discharge a firearm while under the influence).  See Amos, 783 SE2d at 904-905 (Defendant not entitled to immunity based on self-defense at the pretrial stage where defendant never obtained a weapons carry license);  State v. Burks, 285 Ga. 781 (1) (684 SE2d 269) (2009) (interpreting former OCGA § 16-3-24.2 as precluding immunity where a person unlawfully carries a weapon in violation of OCGA § 16–11–120 et seq.). Consequentially, Propst has failed to show that former OCGA § 16-3-24.2

14

treated members of a class – i.e., convicted felons – differently from similarly situated individuals. Accordingly, the trial court did not err in upholding the statute as constitutional and denying Propst's motion to dismiss.[4]

3. In two enumerations of error, Propst contends that his trial counsel rendered ineffective assistance for failing to challenge the constitutionality of OCGA § 16-3-21 (b) (2)[5] and for failing to request a written jury charge on witness impeachment. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the Strickland test, this Court is not required to examine the other. See Green v. State, 291 Ga. 579 (2) (731 SE2d

---

[4] Because Propst failed to satisfy the first prong of his equal protection challenge, we do not need to address whether he met the second. See Reed, 264 Ga. at 466.

[5] OCGA § 16-3-21 (b) (2) states that "(b) A person is not justified in using force under the circumstances specified in subsection (a) of this Code section if he . . . (2) Is attempting to commit, committing, or fleeing after the commission or attempted commission of a felony . . . ." Id.

15

359) (2012). "In reviewing the trial court's decision, '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.'" (Citation omitted.) Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

*(a) Failure to Challenge OCGA § 16-3-21(b)(2)*

Propst first alleges that trial counsel was ineffective for failing to challenge the constitutionality of OCGA § 16-3-21 (b) (2) as overly broad and vague in violation of the Due Process Clauses of the Georgia and United States Constitutions. We disagree.

To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." (Citation omitted). Harrington v. Richter, 562 U.S. 86, 104 (IV) (131 SCt 770, 178 LEd2d 624) (2011). To overcome that presumption, Propst must show that no reasonable counsel would have failed to challenge the

16

constitutionality of OCGA § 16-3-21 (b) (2).  See, e.g. <u>Jones v. State</u>, 292 Ga. 593, 600-601 (7) (d) (740 SE2d 147) (2013); <u>Hartsfield v. State</u>, 294 Ga. 883, 888 (3) (b) (757 SE2d 90) (2014) ("[t]he proper assessment is 'an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind'" (citing <u>Harrington</u>, 562 U.S. at 110)).

As Propst fails to present any compelling authority questioning the constitutionality of OCGA § 16-3-21 (b) (2), he cannot establish deficient performance by trial counsel for failing to challenge the same.  See, e.g., <u>Rickman v. State</u>, 277 Ga. 277, 280 (2) (587 SE2d 596) (2003) ("[I]n making litigation decisions, there is no general duty on the part of defense counsel to anticipate changes in the law" and "'[o]nly in a rare case' would it be ineffective assistance by a trial attorney not to make an objection that would be overruled under prevailing law."); <u>Washington v. State</u>, 271 Ga. App. 764, 765 (1) (610 SE2d 692) (2005) ("[T]he standard for effectiveness of counsel does not require a lawyer to anticipate changes in the law or pursue novel theories of defense."). Consequentially, this claim of ineffective assistance of counsel is without merit.

*(b) Failure to Request a Jury Charge of Impeachment by Prior Inconsistent Statements*

17

We are also not persuaded by Propst's claim that trial counsel was ineffective for failing to submit a written request to charge the jury on impeachment of a witness by a prior inconsistent statement. The record shows that trial counsel requested the following charges: credibility of witnesses; impeachment of witnesses by proof of crime of dishonesty or moral turpitude; impeachment of witnesses based upon evidence of character for untruthfulness; and, an instruction that: "To impeach a witness is to show that the witness is unworthy of belief. The credibility of a witness may be attacked by disproving the facts to which the witness testified." The trial court subsequently gave these instructions to the jury. Moreover, trial counsel emphasized throughout his closing argument that the testimony of Hacker and Cranksaw should not be afforded any weight because they had both given prior conflicting and inconsistent statements.

Reading the jury charge as a whole, we find no reasonable probability that the outcome of the trial would have been different had the additional impeachment charge been requested. Accordingly, this ineffectiveness claim is without merit.

4. Propst further alleges that the trial court committed plain error by

failing to charge the jury on impeachment of a witness by prior inconsistent statements. Again, we disagree.

Because counsel did not object to the trial court not giving the impeachment charge, we review for plain error, "meaning that we will reverse the trial court only 'if the instructional error was not affirmatively waived . . . , was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings.'" (Citation omitted.) Brown v. State, 297 Ga. 685, 691 (4) (777 SE2d 466 (2015) (2015). For the reasons discussed in section 4(b) supra, we find that the trial court's failure to give the additional impeachment charge did not amount to plain error.

5. Finally, Propst contends that the State violated Brady v. Maryland, 373 U.S. 83 (83 SCt 1194, 10 LE2d 215) (1963), when it failed to disclose a recorded 911 call made by Crankshaw which, Propst argues, contained exculpatory and material evidence. Specifically, Propst claims that, had the recording been produced, he would have been able to further impeach Crankshaw with prior inconsistent statements.

To prevail on a Brady claim, a defendant must show that the State

19

possessed evidence favorable to the defendant; defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; the prosecution suppressed the favorable evidence; and had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different.

Blackshear v. State, 285 Ga. 619, 622 (5) (680 SE2d 850) (2009).

Pretermitting whether the 911 call actually qualifies as Brady material, Propst's Brady claim fails for several reasons. First, trial counsel admitted at the motion for new trial hearing that, at the time of trial, he was already aware of the facts in the phone call. See, e.g. Waldrip v. Head, 279 Ga. 826 (II) (A) (620 SE2d 829) (2005) (a defendant's exculpatory statements generally are not Brady material because the information contained therein is known to the defendant). Second, there is no evidence that the State suppressed the recording because the existence of the 911 call came out during trial, and because the State had an "open file policy" making everything available to the defense for review. Cf. Adams v. State, 271 Ga. 485, 487 (3) (521 SE2d 575) (1999) ("Moreover, because that information appeared in the State's file and the prosecution had an 'open file policy' in this case, Appellant had constructive knowledge of the existence of [a co-defendant's] criminal history."). Third, the 911 call is a

20

matter of public record and could have been obtained by Propst with reasonable diligence.   See OCGA § 50-18-72 (a) (26) (allowing disclosure of 911 recordings to criminal defendants via an open records request).  See also <u>Heidler v. State</u>, 273 Ga. 54 (2) (537 SE2d 44) (2000) (no Brady violation where defendant could, and did, obtain records by means of his own, separate subpoena).  Finally, because of the damaging nature of the call, which includes Smith screaming in pain in the background, and Propst's subsequent custodial admission to shooting the firearm, there is no reasonable probability that the outcome of the proceeding would have been different.  Accordingly, this claim is without merit.

<u>Judgment affirmed.  All the Justices concur.</u>

S16A0275.  PROPST v. THE STATE.

NAHMIAS, Justice, concurring.

I join the Court's opinion in full, but I add another point to the discussion in Division 1 (b) regarding the sufficiency of the evidence as to venue. As I see it, the jury could quite reasonably infer that the shooting occurred in Walton County from the testimony that it occurred "just down the street" from and in the same neighborhood as a residence in Walton County and the absence of any indication that either site was close to a county line. See O'Donnell v. Smith, 294 Ga. 307, 313-314 (751 SE2d 324) (2013) (Nahmias, J., concurring). To the extent that the erroneous logic of the majority opinion in Jones v. State, 272 Ga. 900, 903-904 (537 SE2d 80) (2000), precludes jurors from making this common-sense and mathematically supportable inference, I continue to believe that we should eventually disapprove that holding. See Jones v. State, No. S16A0314 (decided July 5, 2016) (Nahmias, J., concurring).