## S02A1788. SPICKLER v. THE STATE.

(575 SE2d 482)

SEARS, Presiding Justice.

Appellant Robert Spickler appeals his convictions for murder and armed robbery.[1] He claims numerous errors were committed by the trial court in both jury selection and at trial. Having reviewed the record and the transcript, we find that no reversible errors occurred. Therefore, we affirm.

The evidence introduced at trial showed that in November 1997, while attending a convention in Nevada, the victim, Bruce Belville, met and socialized with appellant, who was living in Nevada at that time. Before returning home to Georgia, the victim gave appellant his phone number and said to contact him if he was ever in the state. In April 1998, while driving to Florida, appellant and his accomplice, Zellmer, stopped in Georgia and called the victim. The victim invited them to his home, where the trio had drinks before going to a bar frequented by the victim. Upon returning to the victim's home in the early morning hours, the victim showed appellant and Zellmer to a guest room, then went to bed himself. Appellant then found a small sledgehammer in the home, went into the victim's bedroom, and hit the victim in the head seven times as he lay in bed, killing him. Appellant and Zellmer took credit cards, electronics and personal items from the victim's home, then fled the state, throwing the sledgehammer by the roadside along the way. They used the victim's credit card to make purchases and were apprehended out of state. The victim's personal property was found in appellant's car. At trial,

---

[1] The crimes occurred on April 26, 1998. Appellant and co-defendant Zellmer were both indicted on June 25, 1998, and the State filed notice of its intention to seek the death penalty. An interim appeal was granted to answer questions regarding voir dire, and an opinion was issued on September 11, 2000. *Zellmer v. State*, 272 Ga. 735, 736 (534 SE2d 802) (2000). A bifurcated trial was held January 30 through February 20, 2001, and appellant was found guilty of murder, felony murder, and armed robbery. Based upon the jury's recommendation, a life sentence was imposed for murder and a consecutive life sentence was imposed for armed robbery, with the felony murder conviction merging by operation of law. A new trial motion was filed on March 8, 2001, amended on March 5, 2002, and denied on March 28, 2002. The transcript was certified by the court reporter on October 10, 2001. A notice of appeal was filed on April 22, 2002, the appeal was docketed on August 7, 2002, and the appeal was submitted for decision without oral argument.

appellant admitted killing the victim, but claimed he did so because the victim made an unwanted sexual advance toward him. The State sought the death penalty in prosecuting appellant, and the jury recommended a sentence of life without the possibility of parole.

1. As the arbiter of credibility, the jury was neither required to believe appellant's claim that a sexual advance provoked him to attack the victim nor to credit appellant's denial of premeditation or intent.[2] Criminal intent may be found by the jury "upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted."[3] Construed most favorably to the jury's verdict, the evidence adduced at trial — that appellant bludgeoned the victim to death, stole his property and fled the state — was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that appellant was guilty of the offenses of which he was convicted.[4]

2. In *Zellmer v. State*,[5] an interim appeal decided by this Court in 2000, we held that the trial court erred by restricting appellant from voir dire questioning about the two non-death sentencing options available — life without parole and life imprisonment. We held that appellant could voir dire prospective jurors regarding non-death sentencing options, but only to the extent such questioning was directed at discerning jurors' "willingness to consider a life sentence that allows for the possibility of parole and a life sentence that does not."[6] We also specifically listed the voir dire questions regarding this subject that were proper and should be allowed.[7]

On remand, appellant attempted to question prospective jurors regarding matters such as their views on the Parole Board and its members, the meaning of parole, the distinctions between the two non-death sentencing options, and how much time a person sentenced to life in prison may actually serve. Because these voir dire questions exceeded the scope of inquiry permitted under our decision in *Zellmer,* supra,[8] the trial court did not err in restricting appellant from such questioning.

3. The trial court did not err by refusing to excuse two prospective jurors for cause. Whether to strike a juror for cause lies within the sound discretion of the trial court.[9] Before a juror is excused for

---

[2] *Brannon v. State*, 266 Ga. 667, 668 (469 SE2d 676) (1996).

[3] OCGA § 16-2-6.

[4] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] 272 Ga. at 736.

[6] *Zellmer*, 272 Ga. at 736.

[7] Id. at 736-737.

[8] *Lance v. State*, 275 Ga. 11, 14 (560 SE2d 663) (2002).

[9] *Somchith v. State*, 272 Ga. 261, 262 (527 SE2d 546) (2000); *Garland v. State*, 263 Ga. 495, 496 (435 SE2d 431) (1993).

cause, it must be shown that he or she holds an opinion of a defendant's guilt or innocence that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence and the court's charge upon the evidence.[10]

The first juror conceded that his wife had witnessed a recent bank robbery, an upsetting event. He also stated that he understood that particular robbery was unrelated to the crimes for which appellant was being tried, that the other robbery would not interfere with his ability to be fair to appellant, and that he would endeavor to set aside his strong emotions regarding the other robbery when deciding appellant's case. The second juror initially expressed doubt regarding the presumption of innocence, but when the trial court gave him an abbreviated charge on the presumption, he stated he understood the charge and would follow it if so instructed.

Having reviewed the transcript, we conclude that neither of these jurors held a fixed and definite opinion of appellant's guilt or innocence that would have prevented them from adjudicating appellant's case based solely upon the evidence and the trial court's jury charge. It follows that the trial court properly declined to strike the jurors for cause.

4. We reject appellant's claim that the trial court erred by denying his challenge under *Batson v. Kentucky*[11] to the State's striking of three prospective African-American jurors — Jurors Edwards, Tucker and Breeland. Appellant has failed to show purposeful racial discrimination in the exercise of these strikes[12] and the State provided race-neutral reasons for the strikes.[13]

5. While being cross-examined, State's witness Tompkins testified that appellant had said he was tattooed while previously in prison. Appellant moved for a mistrial, claiming that the witness's testimony was nonresponsive to the question and prejudicial. On appeal, appellant claims the trial court abused its discretion by refusing to grant a mistrial. This claim, however, is waived because at trial, appellant waited to make his objection and raise his motion until after both witness Tompkins and the following witness finished their testimony and were excused. In order to preserve an issue for appellate review, there must be a contemporaneous objection made

---

[10] *Somchith*, 272 Ga. at 262; *McClain v. State*, 267 Ga. 378, 380 (477 SE2d 814) (1996).

[11] 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[12] *Williams v. State*, 271 Ga. 323, 324 (519 SE2d 232) (1999).

[13] *Thomas v. State*, 274 Ga. 156, 161 (549 SE2d 359) (2001). Juror Edwards expressed weak views on the death penalty and her husband had recently been prosecuted by the District Attorney's office. Juror Tucker said that given the choice, she would always select a life sentence over the death penalty and also testified about two negative encounters with police officers. Juror Breeland was conscientiously opposed to the death penalty and took a defensive posture when questioned by the State.

on the record at the earliest possible time.[14] Otherwise, the issue is deemed waived on appeal.[15]

6. Appellant also urges that a mistrial was warranted by two of the State's courtroom demonstrations. The first demonstration, designed to show the degree to which the victim's skull moved into the mattress when he was bludgeoned, involved the medical examiner's use of a model skull and a section of mattress. While appellant did object to this testimony's introduction, he failed to move for a mistrial or request other curative action by the trial court. This demonstration, which was relevant to show the force with which the victim was attacked and was made under conditions that fairly illustrated that point, did not warrant the trial court's sua sponte declaration of a mistrial.[16]

The other demonstration was put on by the prosecutor, who, when questioning appellant about how hard he had bludgeoned the victim, struck the hammer used in the killing against a block of wood, making a loud banging noise. Appellant's objection to this demonstration was sustained, but his motion for a mistrial was denied. The trial court correctly concluded that it was very unlikely the loud noise made by the prosecutor at trial was comparable to any noise that might have been made during the killing, and therefore properly put a stop to the State's demonstration. As for appellant's request for a mistrial, we conclude that the trial court did not abuse its discretion in denying the motion. The prosecutor's banging on the board occurred only one time, and then was promptly halted by the trial court. This single demonstration, though improper on the prosecutor's part, was not so prejudicial to appellant's fair trial rights to warrant the extreme remedy of granting a mistrial.

7. Having reviewed the record, we reject appellant's claim that the prosecutor engaged in misconduct during closing arguments. Because appellant testified on direct examination that he had previously been convicted of a crime of moral turpitude, the prosecutor could attempt to discredit his credibility on that basis even though no certified copy of conviction was admitted into evidence.[17] Moreover, the prosecutor noted during closing arguments that the only evidence of voluntary manslaughter was appellant's testimony, which differed from his statement to police at the time of arrest, and urged the jury

---

[14] *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997).

[15] Id. at 353. Moreover, appellant himself subsequently testified that he had previously been in jail, nullifying any claim of error associated with witness Tompkins' testimony. Id.

[16] See *Owen v. State*, 266 Ga. 312, 314 (467 SE2d 325) (1996); *Bennett v. State*, 262 Ga. 149, 154 (414 SE2d 218) (1992).

[17] See *McIntyre v. State*, 266 Ga. 7, 10 (463 SE2d 476) (1995). For this same reason, the trial court was authorized to charge the jury on impeachment by a prior conviction for a crime of moral turpitude.

to infer therefrom that appellant's testimony was intended to secure a jury charge on the lesser crime of voluntary manslaughter.[18] As this was a reasonable inference drawn from the evidence at trial, the prosecutor's argument was not improper.[19] Finally, having reviewed the transcripted closing argument, we disagree with appellant's claim that the State expressed a personal opinion regarding his truthfulness. To the contrary, as noted, the prosecutor simply commented on the fact that appellant's testimony, his only piece of evidence, was markedly different from the other evidence, including his own statement.

8. We have reviewed appellant's remaining enumerations, and find them to be without merit.[20]

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 13, 2003 —
RECONSIDERATION DENIED FEBRUARY 7, 2003.

*Derek H. Jones*, for appellant.

*Patrick H. Head, District Attorney, Russell J. Parker, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.

---

[18] See *Simmons v. State*, 266 Ga. 223, 228 (466 SE2d 205) (1996).

[19] *Simmons*, 266 Ga. at 228.

[20] These include appellant's claims that the trial court erred by admitting into evidence photos of the crime scene and of the victim's body (taken before the autopsy); in excluding from the courtroom three observers who communicated with witnesses who had not yet testified at trial; in charging the jury on bare suspicion, as per appellant's request; and in charging the jury on armed robbery and theft by taking. These also include appellant's claim that the jury's verdict finding him not guilty of voluntary manslaughter should be treated as an acquittal on the murder charge, and his claim that he received ineffective assistance from trial counsel.