300 Ga. 713
FINAL COPY

S16A1850.  DINKINS v. THE STATE.

BENHAM, Justice.

Appellant Trey Dinkins appeals his convictions for malice murder and other crimes related to the shooting death of DaJohn Milton.[1]  On the day in question, John Robbins drove the victim to an apartment complex in Warner Robins.  During the ride over, the victim allegedly used Robbins' phone to tell someone that he would be arriving in a few minutes.  Upon arriving at the complex, appellant walked up as the victim was exiting the vehicle and told Robbins to leave. Marquis Lowe arrived as Robbins was leaving.  Debra Davidson, who lived at the complex, testified she heard gunshots.  When she went out to see what was going on, she saw two African-American men, wearing white shirts and jeans, standing over a lump on the ground.  One of

---

[1] The crimes occurred on March 20, 2011.  On May 31, 2011, a Houston County grand jury indicted appellant along with his co-defendant Marquis Lowe on charges of malice murder, felony murder (two counts), aggravated assault, aggravated battery, and possession of a firearm during the commission of a crime (three counts).  The defendants' trials were severed and appellant was tried from March 12-15, 2012.  The jury returned verdicts of guilt on all charges.  The trial court sentenced appellant to life in prison for malice murder and to five years to be served consecutively for one count of firearm possession.  The remaining charges were either vacated as a matter of law or merged for sentencing purposes.  Appellant moved for a new trial on March 23, 2012; the trial court held a hearing on the motion on December 28, 2015; the trial court denied the motion on February 19, 2016; and appellant timely filed a notice of appeal on March 7, 2016.  Upon receipt of the record, the case was docketed to the September 2016 term of this Court and submitted for a decision to be made on the briefs.

the men had a gun. Davidson told the police the man with the gun was the taller of the two, but at trial she denied being able to discern any difference in height. However, a police officer who investigated the case and who was familiar with both Lowe and appellant, testified appellant was shorter than Lowe.

Davidson said she saw the man with the gun walking away but that he returned and fired additional shots at the lump on the ground. The two men fled, and Davidson went to investigate the lump and discovered it was the victim who had been shot. Davidson asked the victim who shot him, and he replied "Trey Deuce." Authorities later determined "Trey Deuce" was appellant's nickname. While the police were investigating on scene, two women approached asking whether appellant had been shot. These two women were later identified as appellant's mother and girlfriend. Upon receiving a phone call, appellant's mother told police appellant and Lowe had fled to Macon.

A man who lived near the apartment complex said he saw two black males, one tall and the other short, walking by. The man saw the shorter man talking on a cell phone and saw both men change out of the white t-shirts they were wearing, replacing them with black t-shirts. The man said the two

2

males placed their discarded shirts in some bushes near his home.  An officer recovered the white t-shirts near where the two men had been seen walking, as well as two guns—a .38 special revolver and a Bersa .380 pistol—which were wrapped in the t-shirts.  The firearms examiner testified the .380 bullets extracted from the victim's body and recovered from the crime scene were fired from the recovered Bersa .380 pistol.  During their on-scene investigation, police also recovered a cell phone which was later determined to belong to Lowe.

The victim was treated at a local hospital, but died from his injuries a day after the shooting.  The medical examiner stated the victim had numerous gunshot wounds to his torso, some of which were incurred while the victim was on the ground.  The medical examiner testified that, in spite of medical intervention, the victim died from the loss of blood caused by the numerous gunshot wounds he sustained.

Appellant testified at trial.  He denied shooting the victim, claiming he was at his cousin's house at the time the shooting took place.  He admitted, however, that he was with Lowe shortly after the shooting took place because Lowe had come by to pick him up from his cousin's house.  Several

3

witnesses confirmed appellant and Lowe were together a short time after the shooting.

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Lowe was tried and convicted a month prior to the time appellant's trial commenced. The judge who presided over Lowe's trial was the same judge presiding over appellant's trial. Appellant subpoenaed Lowe to give testimony at trial. Outside the presence of the jury, the trial court stated it had been in touch with Lowe's appellate counsel and that appellate counsel had advised that, because Lowe had a pending appeal, Lowe should invoke his Fifth Amendment right against self-incrimination. The trial court then specifically asked Lowe whether he would be invoking his right; he replied in the affirmative; and the trial court dismissed him from appellant's trial. The only objection appellant made at that time was that Lowe should have been made to invoke the Fifth Amendment in front of the jury. The trial court overruled the objection, and appellant proceeded with his next witness.

4

On appeal, appellant contends the trial court erred when it failed to discern from Lowe whether there were any questions he could answer without incriminating himself. Specifically, appellant alleges Lowe could have testified as to his height. Lowe's height was an issue because Davidson told police that, of the two males she saw near the victim, the taller male was the shooter. Appellant's allegation of error, however, is not properly before this Court because he did not raise a contemporaneous objection to the manner in which the trial court handled Lowe's invocation of his Fifth Amendment rights. Benton v. State, 300 Ga. 202, 205 (2) (794 SE2d 97) (2016) ("Generally, to preserve appellate review of a claimed error, 'there must be a contemporaneous objection made on the record at the earliest possible time. Otherwise, the issue is deemed waived on appeal.'. . . Spickler v. State, 276 Ga. 164, 167–168 (5) (575 SE2d 482) (2003)."). Accordingly, this allegation of error is waived. Id.[2]

3. Appellant alleges the prosecution engaged in misconduct by knowingly eliciting false testimony. We disagree. At trial, John Robbins testified he drove the victim to the apartment where the shooting took place

[2] Because this case was tried before the effective date of the new Evidence Code, we have no occasion to decide whether this decision would be subject to plain error review pursuant to OCGA § 24-1-103 (d).

at 3:00 or 4:00 in the afternoon. During the ride, Robbins testified he let the victim use his phone and said the victim spoke to someone, telling that person he was on his way and would arrive in a few minutes. Phone records showed that Robbins' phone number showed up at 4:27 p.m. as a missed call on a phone linked to Lowe. The dispatch records showed that the first 911 call reporting the shooting came in at 4:28 p.m. Appellant argues that Robbins could not have been telling the truth about the timeline of events because the shooting would have been taking place at the same time the victim was using Robbins' phone to call someone. Also, because the call from Robbins' phone was a missed call, appellant asserts there is an implication that Robbins' testimony that the victim spoke to someone while on Robbins' phone was also untrue. Appellant contends that because the State had Robbins' phone records, it must have known Robbins was being dishonest when he testified as a witness for the State.

While Robbins' testimony, the phone records, and the 911 dispatch records certainly create discrepancies, such discrepancies do not indicate the prosecution engaged in misconduct. Indeed, such inconsistencies and how they may impact the credibility or veracity of witnesses are for a jury to reconcile. See Vega v. State, 285 Ga. 32 (1) (673 SE2d 223) (2009) ("'It was

6

for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (Citations omitted.)). Moreover, since no objection was made at trial about any alleged prosecutorial misconduct, any purported error is waived. <u>Benton v. State</u>, supra, 300 Ga. at 305 (2).

4. Appellant next argues that trial counsel was constitutionally ineffective because he failed to object to the manner in which the trial court handled Lowe's invocation of his Fifth Amendment rights; failed to impeach Robbins as to his faulty testimony; and failed to impeach Davidson about her inconsistent testimony as to the relative heights of the shooter and the other perpetrator. In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citations and punctuation omitted.) <u>Pruitt v. State</u>, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). Appellant cannot meet this two-pronged standard.

7

(a) Appellant argues counsel should have pursued specific non-incriminating questions to which Lowe could testify at trial. In particular, appellant argues Lowe should have been allowed to testify as to his height. It was not necessary, however, that Lowe testify about his height because the lead investigator, who was familiar with Lowe and appellant, testified that Lowe was over six feet tall and appellant was approximately five-and-a-half feet tall. Thus, any testimony Lowe could have provided indicating he was taller than appellant would have been cumulative. See Williams v. State, 265 Ga. 681 (1) (461 SE2d 530) (1995) (trial counsel not deficient for failing to call witnesses whose testimony would have been cumulative). See also Wilson v. State, 297 Ga. 86, 88 (2) (772 SE2d 689) (2015) ("The failure of trial counsel to object to such cumulative evidence does not support a claim of ineffective assistance of counsel. [Cit.]"). Furthermore, it cannot be said that Lowe's testifying about his height would have been non-incriminating. Since Davidson gave a statement to police that the shooter was taller than the other perpetrator, Lowe would have implicated himself had he testified about his height. Appellant has not identified any other allegedly non-incriminating information to which Lowe would have been able to testify.

(b) The decision whether to impeach a witness is a matter of trial strategy that typically will not support a claim of ineffective assistance. See Nix v. State, 280 Ga. 141 (3) (b) (625 SE2d 746) (2006). At the motion for new trial hearing, trial counsel said he could not recall what he did concerning impeaching Robbins or impeaching Davidson. He did testify he was well aware of what these two witnesses, as well as other witnesses, would say and what the State would argue because he had observed Lowe's trial which took place a month prior to appellant's trial. Counsel said he prepared himself for appellant's trial based on what he had observed at Lowe's trial.

Our review of the record shows trial counsel was able to make the jury aware of Davidson's inconsistent statements about the heights of the perpetrators. Specifically, although Davidson testified on cross-examination that she could not distinguish between the relative heights of the two men she saw, an investigating officer testified, also on cross-examination, that Davidson told him she saw the taller of the two men shoot the victim. In addition, the jury was aware of the inconsistencies surrounding Robbins' testimony. (See Division 3, supra.) Appellant has not come forward with any evidence establishing trial counsel performed outside the broad range of

professional conduct or that he was prejudiced as a result of said performance. The trial court did not err when it declined to uphold appellant's ineffective assistance claim on these grounds.

Judgment affirmed. All the Justices concur.


Decided March 6, 2017.

Murder. Houston Superior Court. Before Judge Lumsden.

Bernadette C. Crucilla, for appellant.

George H. Hartwig III, District Attorney, Daniel P. Bibler, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.