301 Ga. 882
FINAL COPY

S17A1313. LESLIE v. THE STATE.

HUNSTEIN, Justice.

Appellant Eugene Leslie was tried and convicted of murder and related

offenses in connection with the shooting death of Jason Glenn Wade.[1]  On

---

[1] Leslie was originally indicted by a Houston County grand jury on September 9, 2008, on charges related to Wade's death.  This indictment was dismissed, and he was re-indicted on December 16, 2008 for: malice murder (Count 1); felony murder predicated on aggravated assault (Count 2); aggravated assault (Count 3); two counts of possession of a firearm during the commission of a crime (Counts 4 and 5); carrying weapons within a school safety zone (Count 6); tampering with evidence (Count 7); possession of cocaine with intent to distribute (Count 8); and aggravated battery (Count 9). The State included two statutory aggravating circumstances (Count 10) pursuant to OCGA § 17-10-30 (a), (b); the State filed its notice seeking the death penalty in June 2010.  In August 2011, the parties entered into an agreement that the State would withdraw its intent to seek the death penalty in exchange for Leslie's consent to allow the trial court to consider both life and life without parole as potential sentences if Leslie were convicted.

Prior to a trial held from July 9-12, 2012, the State nolle prossed Counts 6 and 7.  Thereafter, a jury found Leslie guilty of all remaining charges.  The trial court sentenced Leslie to life without parole for malice murder (Count 1), five years consecutive for possession of a firearm (Count 4), and 40 years consecutive for possession of cocaine with intent to distribute (Count 8).  The remaining counts were either merged or vacated by operation of law for sentencing purposes.

Leslie timely filed a motion for new trial on July 19, 2012, and, after receiving new counsel, amended it twice on August 20, 2013, and again on August 31, 2015. After a hearing, the trial court denied the motion as amended on November 15, 2016. Leslie timely filed a notice of appeal.  This appeal was docketed to the April 2017

appeal, Leslie claims that the evidence was insufficient to support his convictions and further alleges two instances of trial court error. For the reasons that follow, we affirm.

1.    First, Leslie argues that the evidence presented at trial was insufficient to support his convictions and sentences. Viewed in a light most favorable to the jury's verdict, the evidence adduced at trial established that, at all relevant times, Wade routinely purchased drugs from Leslie. Prior to his death, Wade allowed Leslie and Leslie's girlfriend, Elizabeth Moore, to stay with him at his apartment in exchange for drugs. After a few weeks, both Wade and his mother asked Leslie and Moore to move out. Initially, Leslie rebuffed this request, but, eventually, he and Moore left and moved into a motel. During this time, Leslie purchased a .40 caliber handgun.

On August 28, 2008, Leslie and Moore returned to Wade's home under the pretense of providing Wade with drugs. Prior to heading over to the apartment, Leslie placed his handgun and some drugs into Moore's purse. Then they picked up their friend, Jordan Evora, who assumed that the group was all going to do drugs at Wade's house. After arriving, Leslie followed Moore into

term of this Court and was thereafter submitted for a decision on the briefs.

2

the bathroom; Leslie subsequently took his gun out of Moore's purse, racked it and, after exiting the bathroom, shot Wade six times. After the first few shots were fired, both Moore and Evora ran from the apartment. Later, Leslie met Moore back at their motel room and told her not to tell anyone about the shooting.

Law enforcement's investigation led them to Evora. He provided officers with Moore's name. When Moore spoke with law enforcement, she provided a comprehensive statement identifying Leslie as Wade's killer. Leslie was subsequently apprehended during a traffic stop, after which law enforcement recovered two small, clear plastic baggies containing a substance later determined to be cocaine.

An autopsy revealed that Wade died as a result of multiple gunshot wounds. The murder weapon was never recovered, and Moore testified at trial that she did not see Leslie's handgun again after the shooting; however, six .40 caliber shell casings were recovered from the scene, all of which were determined to have been fired from the same weapon. Finally, the State

tendered a letter written by Leslie instructing a woman named Renatta Lester to establish an alibi for him for the day of the murder.

Based on the foregoing, the evidence authorized the jury to find Leslie guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2.    Next, Leslie argues that the trial court erred in denying his motion for discharge and acquittal, contending that both his statutory and constitutional right to a speedy trial had been violated. We disagree.

The record shows that Leslie was arrested for charges related to this incident on August 28, 2008. He was originally indicted on September 9, 2008, and was subsequently appointed counsel from the Houston County Public Defender's Office. On December 5, 2008, defense counsel filed a statutory speedy trial demand in accordance with OCGA § 17-7-171. The original indictment was dismissed, and Leslie was re-indicted on December 16, 2008, which included statutory aggravating circumstances in support of the State seeking the death penalty. During this time, the prosecutor and the public defender discussed that the State would be filing a death notice sometime

4

thereafter. On December 19, 2008, defense counsel withdrew the statutory speedy trial demand that he had filed in the original case.

In early January 2009, Leslie was appointed new counsel from the Capital Defender's Office. The Capital Defender's Office continued its representation through May 2010 when it was permitted to withdraw from the case because the State had yet to file a formal notice seeking the death penalty. Leslie was again appointed new counsel on June 16, 2010. Two days later, the State filed its "Notice of Intent to Seek the Death Penalty." The Capital Defender's Office re-entered the case at the end of June, and Leslie's other counsel withdrew in August 2010, citing his ineligibility to try death penalty cases.

Since asserting and then withdrawing his statutory speedy trial demand in December 2008, Leslie took no other action to renew his statutory speedy trial demand or assert his constitutional right to a speedy trial until February 2011, when he filed his motion for discharge and acquittal alleging violations of his statutory and constitutional speedy trial rights, which the trial court subsequently denied in June 2011.

(a)     *Statutory Speedy Trial Demand*

Leslie contends, as he did below, that the State violated his statutory right to a speedy trial when the State misled defense counsel by promising to "quickly" file a death notice in his case. He alleges that this misrepresentation caused Leslie's original attorney to withdraw his statutory speedy trial demand. However, the pleading that withdrew the speedy trial demand states no such condition, and Leslie cites no authority in support of his proposition that Georgia law provides for the "conditional" withdrawal of a statutory speedy trial demand. Consequently, the trial court did not err in denying this portion of Leslie's motion for discharge and acquittal.

(b)   *Constitutional Speedy Trial Demand*

Leslie also argues that the 22-month delay between his indictment and the State's filing of its notice seeking the death penalty, and the almost four-year delay between his indictment and jury trial violated his constitutional right to a speedy trial. Constitutional speedy trial claims are evaluated under the two-part framework set out in Barker v. Wingo, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and Doggett v. United States, 505 U. S. 647 (112 SCt 2686, 120 LE2d 520) (1992). See Ruffin v. State, 284 Ga. 52 (2) (663 SE2d 189) (2008). In reviewing such claims,

"[f]irst, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered 'presumptively prejudicial.'" [Cit.] If the delay has crossed this threshold, the court must proceed to a "delicate, context-sensitive, four-factor balancing test" to determine whether a speedy trial violation has occurred. [Cit.] This balancing test requires analysis of (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. [Cit.]

Phan v. State, 290 Ga. 588, 592 (723 SE2d 876) (2012). Moreover, "we must accept the factual findings of the trial court unless they are clearly erroneous, [cit.] and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion. State v. Buckner, 292 Ga. 390, 391 (738 SE2d 65) (2013). With these principles in mind, we review the record and Leslie's claim.

(i) *Length of delay.* Here, almost four years passed between Leslie's arrest and his trial. Accordingly, the trial court's finding that this lapse of time was not presumptively prejudicial was erroneous.[2] See, e.g., Buckner, 292 Ga. at 393 (53-month delay was presumptively prejudicial); Phan, 290 Ga. at 593 (more than four-year delay crossed the threshold of presumptive prejudice);

---

[2] Though the trial court concluded that Leslie had not met his burden for presuming prejudice, it did conduct a proper Doggett-Barker analysis.

7

Boseman v. State, 263 Ga. 730, 732 (1) (a) (438 SE2d 626) (1994) (27-month delay in death penalty case presumptively prejudicial), overruled on other grounds, Sosniak v. State, 292 Ga. 35 (734 SE2d 362) (2012).  This lengthy delay is weighed against the State in the first prong of the Barker analysis.  See State v. Porter, 288 Ga. 524, 527 (2) (c) (2) (705 SE2d 636) (2011).

(ii)    *Reasons for the delay.*  As to the second prong, though the trial court assigned some blame to Leslie for causing delays, it ultimately found most of the fault for the delay rested with the State.  The State does not dispute this finding, and we agree that the record shows that Leslie's prosecution was delayed by the actions of both parties.   Still, we agree with the trial court that, after weighing all of the evidence in the record, this factor counts against the State, though with less weight as the delay does not appear to have been designed to deliberately sabotage Leslie's case.  See Ruffin, 284 Ga. at 60.

(iii)    *Defendant's assertion of the right.*  "The relevant question for purposes of the third [speedy trial] factor is whether the accused has asserted the right to a speedy trial 'in due course.'"  (Citation omitted.) Ruffin, 284 Ga. at 63.  This factor "requires a close examination of the procedural history of the case with particular attention to the timing, form, and vigor of the accused's

8

demands to be tried immediately." Id. However, "an extended delay in asserting the right to a speedy trial should normally be weighed *heavily* against the defendant." (Emphasis in original.) Porter, 288 Ga. at 529 (2) (c) (3). Here, Leslie asserted and then withdrew his statutory speedy trial demand in December 2008; he failed to re-assert this right until over two years later, when he filed his motion for discharge. Notably, at no point during this period did the defense assert any objection to the slow pace of the case. Therefore, this factor, as the trial court properly found, weighs heavily against Leslie.

(iv) *Prejudice*. "Whether the defendant has established prejudice as a result of the delay requires consideration of the oppressiveness of pre-trial incarceration, undue anxiety suffered by the defendant, and impairment of his ability to mount a defense. Phan, 290 Ga. at 596. The record supports the trial court's finding that Leslie failed to adduce any evidence in support of these considerations; therefore, this factor does not measurably favor Leslie.

In sum, after reviewing the record and the findings of the trial court, we find that the trial court did not abuse its discretion in denying Leslie's motion for discharge and acquittal on speedy trial grounds.

9

3.      Lastly, Leslie contends that the trial court erred in denying his motion to suppress the Renatta Lester letter.  Namely, Leslie contends he maintained a presumption of privacy in his outgoing jail mail because he was a pre-trial detainee, not a convicted prisoner, and, therefore, the State could not search his mail without probable cause.  We disagree.

A pre-trial detainee's Fourth Amendment expectation of privacy in his cell and personal effects "is necessarily diminished."  See Thomas v. State, 263 Ga. 85, 87 (3) (428 SE2d 564) (1993).  Consequently, items found during searches conducted for security and maintenance purposes are not within the scope of protection of the Fourth Amendment.  Id.  See also State v. Henderson, 271 Ga. 264, 266 (3) (517 SE2d 61) (1999).  However, where a search is not initiated for legitimate prison objectives, but instead is instigated by the State for the purposes of bolstering the prosecution's case against a pre-trial detainee, then the pre-trial detainee "retains a limited but legitimate expectation of privacy" and is protected from an unreasonable search.  Id. at 267 (3).

Here, Leslie wrote the Renatta Lester letter from his jail cell and then placed it in the outgoing mail; the letter was later seized pursuant to the jail's routine mail inspection procedures, which all inmates were informed of during

10

their incarceration. At the motion to suppress hearing, the deputy who seized the letter testified that, while inspecting inmate mail, she pays attention to the thickness of an envelope because it indicates that the mail could contain contraband. Upon inspecting Leslie's letter, the deputy noticed the thickness of the envelope, as well as gang signs written on the front. She further testified that her inspection of the letter was done pursuant to security protocols and not specifically targeted at Leslie.

Because the record shows that the Renatta Lester letter was recovered during a search conducted for security and maintenance purposes, the trial court properly found that Leslie's Fourth Amendment rights were not violated.

Leslie also argues that the trial court erred by admitting the letter into evidence because the State failed to properly authenticate it. However, because Leslie did not raise this objection at trial, it is not preserved for review in this Court. See Dinkins v. State, 300 Ga. 713, 715 (2) (797 SE2d 858) (2017).[3]

Judgment affirmed. All the Justices concur.

---

[3] Similar to Dinkins, because this case was tried before the effective date of the new Evidence Code, we have no occasion to decide whether this evidentiary ruling amounts to plain error pursuant to OCGA § 24-1-103 (d).

Decided August 28, 2017.

Murder. Houston Superior Court. Before Judge Nunn.

Jonathan P. Waters, for appellant.

George H. Hartwig III, District Attorney, Daniel P. Bibler, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, S. Taylor Johnston, Assistant Attorney General, for appellee.