303 Ga. 184
FINAL COPY

S17A1349. GREENE v. THE STATE.

MELTON, Presiding Justice.

Following a jury trial, Eddieard Konta Greene was found guilty of malice murder, felony murder, aggravated assault, and various other offenses in connection with the shooting deaths of Freddie Jackson and Laura Dowdy and the shooting of Kendra Hayes.[1] On appeal, Greene contends that the trial court

---

[1] On May 8, 2013, Greene was indicted for two counts of malice murder, five counts of felony murder (two of which were predicated on aggravated assault, two more predicated on the use of a firearm by a convicted felon, and one predicated on threatening a witness in an official proceeding), three counts of aggravated assault, six counts of use of a firearm by a convicted felon, and one count of threatening a witness in an official proceeding. Following a July 8-16, 2014 jury trial, Greene was found guilty on all counts. On August 14, 2014, the trial court sentenced Greene as a recidivist to life imprisonment without the possibility of parole for the murder of Jackson, twenty consecutive years for the aggravated assault of Hayes, fifteen concurrent years for the use of a firearm by a convicted felon in connection with the shooting of Hayes, and another consecutive sentence of life without the possibility of parole for the murder of Dowdy. The trial court purported to merge the remaining counts for sentencing purposes. However, with respect to the felony murder counts, these counts were actually "vacated by operation of law" rather than "merged" with malice murder counts for sentencing purposes (see Malcolm v. State, 263 Ga. 369 (4) (434 SE2d 479) (1993)), which does not affect the sentence imposed,

erred in allowing certain statements of one of the deceased victims, Dowdy, to be admitted into evidence at trial under the forfeiture-by-wrongdoing exception to the rule against hearsay (see OCGA § 24-8-804 (b) (5) of Georgia's new Evidence Code); and that the State improperly introduced fabricated evidence to secure the admission into evidence of Dowdy's statements at trial. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial revealed that, while walking home on October 23, 2012, Hayes saw Greene, whom she recognized as a former crack cocaine customer of hers who had recently stolen drugs from her. Hayes told Greene that he needed to come by her apartment to pay for the stolen drugs. Later that afternoon, Greene arrived at the door of Hayes' apartment, where Hayes lived with her fiancé,

and we do not address any other potential sentencing errors, as the State has not filed a cross-appeal. See Dixon v. State, 302 Ga. 691 (4) (808 SE2d 696) (2017) ("[W]hen a merger error benefits a defendant and the State fails to raise it by cross-appeal, we henceforth will exercise our discretion to correct the error upon our own initiative only in exceptional circumstances."). Greene filed a motion for new trial on August 18, 2014, which he amended on January 25, 2016, and February 29, 2016. Following an April 18, 2016 hearing, the court denied the motion on June 7, 2016. Following the payment of costs, Greene's timely appeal was docketed in this Court for the August 2017 term and submitted for decision on the briefs.

Jackson. Hayes informed Jackson that Greene was there, and Jackson exited the apartment to speak with Greene. Before Jackson stepped out, Hayes handed him a .25 caliber pistol.

Two eyewitnesses who were sitting outside of the apartment building at that time saw Jackson and Greene walk out of Hayes' apartment door. One of the witnesses, Hayes' cousin, Emmit, who recognized Greene from "previous transactions" around the neighborhood, then saw Greene fire five to seven shots at Jackson. Emmit identified Greene in both a photographic lineup and at trial. Another eyewitness, Valencia Williams, could not see the shooter directly from his particular vantage point, but he did see a raised hand firing a gun multiple times. Jackson fell to the ground, and he later died from multiple gunshot wounds, including a puncture wound to his heart. Injuries to Jackson's hands indicated that it was unlikely that he had his own gun in his hand at the time of the shooting, and when Jackson's gun was later found by police it was still fully loaded.

Hayes opened the front door of her apartment when she heard the gunshots, and she saw Greene running away. Upon seeing Hayes, Greene fired a shot at her, hitting her in the arm. Hayes survived her injury, and she identified

Greene as the shooter both in a photographic lineup and at trial.

Police responded to the murder scene, where they found a third eyewitness, Dowdy, who stated that she knew Greene personally and saw him shoot Jackson while she was outside on her front porch. Dowdy also identified Greene as the shooter in a photographic lineup. Dowdy claimed that she knew that the shooting had taken place over stolen crack cocaine, and she also led police to Greene's residence. However, Greene was not at his home at that time. After police were able to independently verify the information provided by Dowdy, they paid her a $350 cash reward for her information. According to a neighbor who testified at trial, Dowdy then began talking openly in the neighborhood about knowing who had committed Jackson's murder and that she had seen the crime from her window. Another neighbor testified that Dowdy was "bragging" about knowing who killed Jackson. This neighbor talked with Dowdy about the $350 that she had recently acquired and the fact that she had spent some of this money on a new cell phone, and he warned Dowdy that she needed "to watch out what [she's] putting out on the street." By October 25, 2012, a search warrant was executed for Greene's home, and his face was on the local evening news as a suspect being pursued by police.

4

In the early morning hours of October 27, 2012, Greene killed Dowdy in her home by shooting her through her left eye and in her left arm while he was standing from one to two feet away. A witness who heard the gunshots at the time that Greene killed Dowdy saw the shooter running away from Dowdy's home, and he later identified Greene as the shooter in a photographic lineup. Another witness who lived down the hall from Dowdy also saw the shooting, and he gave a description of the shooter to police that was similar to Greene's physical appearance.

The evidence was sufficient to enable a rational trier of fact to find Greene guilty of all of the crimes of which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Greene contends that the trial court erred by admitting into evidence the statements that Dowdy made implicating him in Jackson's shooting death pursuant to the forfeiture-by-wrongdoing exception to the rule against hearsay. See OCGA § 24-8-804 (b) (5). We disagree.

Pursuant to OCGA § 24-8-804 (b) (5):

The following [type of statement] shall not be excluded by the hearsay rule if the declarant is unavailable as a witness: . . . A statement offered against a party that has engaged or acquiesced in

5

wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.

As the United States Supreme Court has explained, "one who obtains the absence of a witness by wrongdoing forfeits the right to confrontation." Davis v. Washington, 547 U. S. 813, 833 (126 SCt 2266, 165 LE2d 224) (2006). Where a trial court finds by a preponderance of the evidence that a party has acted with the purpose of making a person unavailable as a witness against him, and where the evidence is sufficient to satisfy the preponderance of evidence standard, a trial court does not abuse its discretion in allowing the unavailable victim's statements to be admissible at trial against the party who caused the victim's absence. See Hickman v. State, 299 Ga. 267 (4) (787 SE2d 700) (2016). See also OCGA § 24-1-104 (a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to [certain limitations not applicable here]. In making its determination, the court shall not be bound by the rules of evidence except those with respect to privileges. Preliminary questions shall be resolved by a preponderance of the evidence standard."); Anglin v. State, 302 Ga. 333, 335 (2) (806 SE2d 573) (2017) ("The admission of evidence is committed to the sound discretion of the

trial court, and the trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion.") (citation omitted).

However, pretermitting the question whether the trial court abused its discretion in finding that Dowdy's statements were admissible, we find the admission of her statements to have been harmless in light of the extremely strong evidence of Greene's guilt. There was another witness to the shooting besides Dowdy who saw the entire shooting of Jackson; remembered Greene from his prior activities around the neighborhood; and identified Greene as the shooter. Hayes also heard the shooting of Jackson and was a witness to her own shooting moments later by Greene as he ran away from the scene. Dowdy's statements were largely cumulative of those of other witnesses, and carried less weight by virtue of having been impeached as discussed in Division 3, infra. We find no harm from the admission of Dowdy's statements. See Rutledge v. State, 298 Ga. 37, 40 (3) (779 SE2d 275) (2015) (no harm from admission of hearsay that was "largely cumulative" of other properly admitted testimony); London v. State, 274 Ga. 91, 94 (4) (c) (549 SE2d 394) (2001) (admission of hearsay that was cumulative of other evidence elicited at defendant's trial was harmless in

7

light of overwhelming evidence of defendant's guilt).

3. Greene argues that the State violated his right to due process by knowingly using fabricated evidence to secure the admission of Dowdy's statements against him at trial. See Napue v. Illinois, 360 U. S. 264, 269 (79 SCt 1173, 3 LE2d 1217) (1959) ("[A] conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."); Davis v. State, 292 Ga. 90, 92 (2) (734 SE2d 401) (2012) ("Due process guarantees that a criminal defendant will be treated with that fundamental fairness essential to the very concept of justice. In order to declare a denial of it [a court] must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.") (citation and punctuation omitted). In support of this claim, he points to inconsistencies between a recorded statement to police from Dowdy in which she claimed that she had *not* seen the shooting, the testimony of a police officer at trial who claimed that Dowdy told him in an unrecorded statement that she *had* seen the shooting from her porch, and the physical layout of the apartment complex which Greene claims would have made it impossible for Dowdy to have seen the shooting from her porch. He claims that, due to

8

these inconsistencies, the State should have known that the testimony from the police officer presented at trial regarding Dowdy telling him that she saw Jackson's shooting from her porch was false. However, the mere fact that evidence is conflicting does not render one's trial fundamentally unfair. Anthony v. State, 298 Ga. 827, 829 (1) (785 SE2d 277) (2016) ("As we have explained many times before, conflicts in the evidence . . . are for the jury to resolve.") (citation and punctuation omitted). Indeed, the presentation of conflicting evidence alone does not support a showing that the police officer was necessarily being dishonest about what Dowdy allegedly told him or that the State knowingly presented false testimony. Compare, e.g., Fugitt v. State, 251 Ga. 451 (307 SE2d 471) (1983) (conviction reversed where there was "no doubt" that material witness' testimony "in every material part [was] purest fabrication," as witness was incarcerated at time he claimed to have been witness to events where it was impossible for him to have been present) with Dinkins v. State, 300 Ga. 713, 715 (3) (797 SE2d 858) (2017) (In the context of prosecutorial misconduct, while the State's presentation of inconsistent evidence may "certainly create discrepancies, such discrepancies do not indicate the prosecution engaged in misconduct. Indeed, such inconsistencies and how they

9

may impact the credibility or veracity of witnesses are for a jury to reconcile.").

Here, Greene thoroughly explored the inconsistencies between the officer's testimony and the other evidence both at trial and in his closing argument to encourage the jury to consider them. These inconsistencies were for the jury to resolve, and "[i]t cannot be said that [Greene's] trial was fundamentally unfair." Davis, supra, 292 Ga. at 92 (2).

Judgment affirmed. All the Justices concur.

Decided March 5, 2018.

Murder. Chatham Superior Court. Before Judge Karpf.

<u>Amy L. Ihrig</u>, for appellant.

<u>Meg E. Heap, District Attorney, Emily C. Puhala, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General</u>, for appellee.