**FIFTH DIVISION**
**MCFADDEN, C. J.,**
**RICKMAN, P. J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 30, 2021**

# In the Court of Appeals of Georgia

A21A0025. HUGHES v. THE STATE.

MCFADDEN, Chief Judge.

After a jury trial, Jimmie Hughes was convicted of rape, incest, aggravated child molestation, and two counts of child molestation. The trial court denied Hughes's motion for new trial, and he filed this appeal. Hughes argues that the trial court erred in denying his motion to dismiss the charges against him because the state violated his constitutional right to a speedy trial. We hold that Hughes has failed to show that the trial court abused his substantial discretion. So we affirm.

1. *Factual background.*

Hughes was arrested on April 8, 2016. He was indicted almost a year later on March 13, 2017. The indictment charged Hughes with five counts of sexual crimes against his daughter, occurring from April 2004 to March 2008. Two weeks after he

was indicted, Hughes filed a demand for speedy trial under the Sixth Amendment to the United States Constitution.

The case was placed on an August 2017 trial calendar. On August 14, Hughes filed a motion to dismiss two counts of the five-count indictment, arguing that the allegations of those two counts were not sufficient to invoke the statute-of-limitation tolling provisions of OCGA § 17-3-2.1 (a).

He relied on *Mosby v. State*, 319 Ga. App. 642 (738 SE2d 98) (2013), in which we applied the rule that, in order to invoke those tolling provisions, an indictment must allege that the victim was "under the age of 16." Id. at 646 (2) (b). Applying that rule, we held that an indictment alleging that the victim was "a child under the age of thirteen years" failed to invoke the tolling provision. Id. Here, count three of the indictment against Hughes alleged that the victim was "less than 10 years of age." Count four of the indictment did not allege any age.

The court considered Hughes's motion to dismiss as a preliminary matter when the case came on for trial on August 21, 2017. The state conceded that the two counts of the indictment were flawed under the authority of *Mosby*, agreed that the court should grant Hughes's motion to dismiss, and asked for a continuance to correct the error and re-indict Hughes on the two flawed counts.

Hughes opposed the continuance. The state responded that if it were not granted a continuance, then it would appeal the dismissal of the two counts. The trial court granted Hughes's motion to dismiss counts three and four and also granted the state's motion for continuance over Hughes's objection, reasoning that a continuance would result in a shorter delay than an appeal and thus better protect Hughes's rights. The court continued the case to the November 13, 2017 jury trial calendar.

The state redrafted the indictment, and the grand jury returned a true bill of indictment on October 9, 2017. The case was set to begin November 13, 2017. That day, Hughes filed a "plea in bar and motion to dismiss for failure to receive a speedy trial." The trial court denied the motion and the trial proceeded.

At the trial, Hughes's daughter, who was 17 years old at the time of trial, testified that Hughes sexually abused her from the time she was four until she was eight. The abuse stopped when the victim's parents separated and the victim, her mother, and her sister moved out of the family's residence. The jury returned a verdict of guilty on all counts. After the trial court denied his motion for new trial, Hughes filed this appeal.

2. *Analytical framework of a constitutional speedy trial claim.*

"The United States Constitution guarantees that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]' U.S. Const. amend. VI." *Henderson v. State*, __ Ga. __, __ (2) (850 SE2d 152) (2020). The framework for deciding all constitutional speedy trial claims is laid out in *Barker v. Wingo*, 407 U.S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U.S. 647 (112 SCt 2686, 120 LE2d 520) (1992). *Ruffin v. State*, 284 Ga. 52, 55 (2) (663 SE2d 189) (2008). The analysis has two stages:

> [F]irst, the court must determine whether the interval from the accused's arrest, indictment, or other formal accusation to the trial is sufficiently long to be considered presumptively prejudicial. [Second, i]f the delay has crossed this threshold, the court must proceed to a delicate, context-sensitive, four-factor balancing test to determine whether a speedy trial violation has occurred.

*Leslie v. State*, 301 Ga. 882, 885 (2) (b) (804 SE2d 351) (2017) (citations and punctuation omitted). The four factors to be considered in the case of presumptively prejudicial delay are (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) the prejudice to the defendant. *Heard v. State*, 295 Ga. 559, 563 (2) (a) (761 SE2d 314) (2014) (citation and punctuation omitted). "We must accept the court's findings of fact if the record contains any

4

evidence to support them, and we will defer to the court's ultimate conclusion unless it amounts to an abuse of discretion, even though we might have reached a different conclusion were the issue committed to our discretion." Id. (citation and punctuation omitted).

3. *Application of the framework to Hughes's case.*

(a) *First stage*.

Here, the trial court correctly found — and the state concedes— that the 19-month delay from Hughes's arrest until the date of trial was presumptively prejudicial. See *Robinson v. State*, 287 Ga. 265, 266 (1) (a) (695 SE2d 201) (2010) (delay of 18 months is presumptively prejudicial). So the trial court properly proceeded to apply the four *Barker* factors in the second stage of the analysis.

(b) *Second stage*.

(1) *Length of delay*.

After determining that the delay is presumptively prejudicial so as to trigger application of the four factors of *Barker*, the length of delay must be reconsidered as the first factor. *Ruffin*, 284 Ga. at 56-57 (2) (b) (i). "This is because uncommonly long delays have a tendency to compromise the reliability of trials in ways that neither party can prove or, for that matter, identify." *Hayes v. State*, 298 Ga. App. 338, 341

(2) (a) (680 SE2d 182) (2009) (citation and punctuation omitted). The trial court found that the delay was not unreasonably long, but nonetheless weighed this factor slightly against the state since a 19-month delay is presumptively prejudicial. Hughes does not challenge this finding.

(2) *Reasons for delay*.

The court found that both the state and Hughes contributed to causing the delay. Eleven months of the nineteen-month delay occurred between Hughes's April 8, 2016 arrest and his March 13, 2017 indictment. The court found that the state attributed this delay to the complexity of the charges and the preparation of the charges for grand jury indictment. The court determined that this delay was not deliberate and was not intended to prejudice Hughes. The court added that the pre-indictment delay was caused, in part, by the parties' attempts to negotiate a resolution of the charges before Hughes was indicted. See *Jenkins v. State*, 294 Ga. 506, 512 (2) (b) (2) (iii) (755 SE2d 138) (2014) (delay caused by protracted plea negotiations is neutral). So the court weighed those 11 months against the state, but not heavily.

As for the eight-month delay after the March 13, 2017 indictment, the court found that Hughes's trial tactic of filing his statute-of-limitation motion to dismiss the week before the scheduled August 2017 trial contributed to the delay; the state was

6

ready to try the case but Hughes's last-minute filing caused the trial to be delayed. The court found that had Hughes filed his motion to dismiss sooner, the state would have been able to correct the drafting error and Hughes would have been tried in August 2017 as originally scheduled, less than five months after his March 27, 2017 demand. See *Jenkins*, 294 Ga. at 512 (2) (b) (2) (iii) (delay from defense counsel's filing of legitimate motions and pleas weighed relatively benignly against defendant); *Torres v. State*, 270 Ga. 79, 80-81 (2) (508 SE2d 171) (1998), overruled in part on other grounds in *Roberts v. State*, 309 Ga. 639, 640 n. 1 (847 SE2d 541) (2020) (delay attributed to defendant's successful request to quash indictment weighed against defendant); *Rackoff v. State*, 275 Ga. App. 737, 738 (1) (b) (621 SE2d 841) (2005) (reasons for delay were largely attributable to the defendant's filing of pretrial motions).

Balancing all the reasons for the delay, the court determined that the reason-for-delay factor weighed slightly against Hughes. Hughes has not shown that the trial court abused his broad discretion.

(3) *Hughes's assertion of the right*.

The trial court found that Hughes filed his speedy trial demand almost a year after he was arrested and had obtained counsel, a finding supported by the record. It weighed this factor slightly against Hughes.

Hughes argues that this factor should not be counted against him at all because he asserted his right in due course and his motion was not ripe until two defense witnesses had died because until then, there was scant prejudice to Hughes. But the issue of whether Hughes timely asserted his rights does not depend on when Hughes moved to dismiss the charges because of prejudicial delay. Rather, the issue depends on when he asserted his right to a speedy trial. "[T]he accused bears some responsibility to invoke the speedy trial right and put the government on notice that he or she, unlike so many other criminal defendants, would prefer to be tried as soon as possible." *Ruffin*, 284 Ga. at 62 (2) (b) (iii). Hughes has not shown that the trial court abused his discretion in weighing this factor slightly against Hughes.

(4) *Prejudice*.

The final factor in the *Barker* analysis is prejudice to the defendant. The types of prejudice associated with an unreasonable delay before trial include

> oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by

8

dimming memories and loss of exculpatory evidence. Of these forms of prejudice, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*State v. Porter*, 288 Ga. 524, 529 (2) (c) (4) (705 SE2d 636) (2011) (citations and punctuation omitted).

The trial court found that Hughes's pretrial incarceration was not oppressive, given that he was homeless immediately prior to his arrest, and that any anxiety he suffered as a result of the delay was not unusual. As for the most important consideration, the court concluded that the delay did not impair Hughes's ability to present his defense. The court found that although two of Hughes's witnesses had died, he had other witnesses available to testify for the same purposes as the unavailable witnesses. The court weighed this factor equally between the state and Hughes.

Hughes argues that he presented sufficient evidence of prejudice. He argues that his defense was that the victim lied at the behest of her mother, who "had just been outed as being unfaithful to Hughes" and that Hughes "had just confronted his wife with her infidelity when the accusations were suddenly made about his abuse"

9

of the victim. And the two deceased witnesses would have testified about the mother's unfaithfulness.

We disagree for two reasons. First, the trial transcript demonstrates that the victim did not make her outcry "just" after Hughes outed the mother and confronted her with her infidelity. Hughes's time line does not add up. Hughes himself testified at trial that he had caught the mother cheating on him in 2007 and that he and the victim's mother argued about her unfaithfulness prior to their 2008 separation. »The victim's outcry came seven years later in 2015. Hughes also testified that the last time he had argued with the mother was in 2013 or 2014, at least a year before the outcry, and their argument was not about the mother being unfaithful (since they had separated in 2008) but about the mother "bringing men home around [his] daughters." So Hughes's theory that the victim lied at the behest of her mother who "had just been outed as unfaithful" is not supported by the record.

Second, the record supports the trial court's finding that other witnesses were available to testify on the issues for which Hughes intended to call the deceased witnesses. "Generally, in order for a defendant to carry his burden of showing prejudice due to the unavailability of a witness, he must show that the missing witness could supply material evidence for the defense." *Torres*, 270 Ga. at 80-81 (2).

10

Hughes argues that he intended to call as witnesses a friend and his sister, who both died before trial. The friend would have testified that the victim was not afraid to be around Hughes, that the victim is dishonest, and that he had seen the mother with other men as far back as 2007. Hughes's deceased sister would have contradicted a similar transaction witness and would have testified that the victim showed no animosity or fear being around Hughes. She also had photographs of Hughes with the victim that showed that the victim was not afraid of Hughes.

But, as the trial court found when denying the motion before trial, Hughes had multiple potential witnesses who could testify that the victim was not afraid of him; that the mother had cheated on him and gone on dates with other men; and that the similar transaction victim was lying. Some of those witnesses actually testified at trial, although Hughes's counsel did not ask them about the mother's unfaithfulness (but one of them, on cross-examination by the state, referred to "the split-up between [Hughes] and his wife when she cheated"). Two of Hughes's witnesses testified that the victim displayed no fear or animosity toward Hughes. And one of them testified that the victim "could stretch the truth."

Hughes has "failed to show that his sister [and his friend] would have been . . . material witness[es]. . . ." *State v. Gay*, 321 Ga. App. 92, 99 (3) (d) (741 SE2d 217)

11

(2013). So the trial court did not err in finding that their deaths did not substantially impair Hughes's defense. "Given (Hughes's) generalized complaints regarding his witnesses without any real showing of harm to his defense, it cannot be said that the trial court erred in discounting his claims." *Brooks v. State*, 285 Ga. 246, 248 (2) (674 SE2d 871) (2009) (citation and punctuation omitted).

"A trial court exercises substantial discretion in applying the *Barker* balancing test, and its ultimate judgment is reviewed on appeal only for abuse of that discretion." *State v. Porter*, 288 Ga. at 533 (2) (e). Hughes has not shown that the trial court abused that substantial discretion.

*Judgment affirmed. Rickman, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*